IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| OLA, LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>BUILDER HOMESITE, INC., NEW HOME TECHNOLOGIES, L.L.C., BEAZER HOMES USA, INC., CAPITAL PACIFIC HOLDINGS, INC. D/B/A CAPITAL PACIFIC HOMES, CENTEX CORPORATION, CENTEX REAL ESTATE CORP., WEEKLEY HOMES, L.P. D/B/A DAVID WEEKLEY HOMES, KB HOME, E.KB, INC., LENNAR CORPORATION, LENNAR.COM, INC., PULTE HOMES, INC., PULTE.COM, INC., STANDARD PACIFIC CORP. D/B/A STANDARD PACIFIC HOMES, TOLL BROTHERS, INC., GEORGIA-PACIFIC CORPORATION, HEARTH & HOME TECHNOLOGIES, INC., HONEYWELL INTERNATIONAL INC., KOHLER CO., MASCO CORPORATION, OVERHEAD DOOR CORPORATION, OWENS CORNING, PROGRESS LIGHTING INC., SQUARE D COMPANY, THERMA-TRU CORP., WEYERHAEUSER COMPANY, WHIRLPOOL CORPORATION and YORK INTERNATIONAL CORPORATION<br><br>    Defendants. | Civil Action No. _____<br><br><br><br><br><br>Jury Demanded |

## ORIGINAL COMPLAINT

OLA, llc, plaintiff, files this Complaint against the defendants identified in paragraphs 2 through 35 for infringement of United States Patent Nos. 7,076,455 ("'455 patent") and 7,254,553 ("'553 patent"), violation of the Illinois Trade Secrets Act, breach of contract, common law fraud and violation of the antitrust laws.

Dockets.Justia.com

## PARTIES

*The plaintiff*:

1.     OLA, llc ("OLA") is an Illinois Limited Liability Company with its principal place of business located at 2731 N. Lincoln Avenue, Chicago, Illinois 60614. It is the assignee of the '455 and '553 patents issued to Bruce A. Fogelson ("Fogelson").

*The defendants*:

2.     Builder Homesite, Inc. ("BHI") is a Delaware corporation with its principal place of business located at 5300 Rita Part Ct., Bldg. A, Suite 100, Austin, Texas 78727. BHI may be served with process through its registered agent Capital Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

3.     New Home Technologies, L.L.C. ("NHT") is a Texas limited liability company with its principal place of business located at 11900 New Ranch Road 620 N., Austin, Texas 78750. NHT may be served with process through its registered agent BHI, 1812 Center Creek Drive, Suite 300, Austin, Texas 78754.

4.     Beazer Homes USA, Inc. ("Beazer") is a Delaware corporation with its principal place of business located at 1000 Abernathy Road, Suite 1200, Atlanta, Georgia 30328. Beazer may be served with process through its registered agent Corporation Service Company, 40 Technology Parkway South #300, Norcross, Georgia 30092.

5.     Capital Pacific Holdings, Inc. d/b/a Capital Pacific Homes ("Capital Pacific") is a Delaware corporation with its principal place of business located at 4100 Mac Arthur Blvd., Newport Beach, California 92660. Capital Pacific may be served with

process through its registered agent Corporation Service Co. d/b/a CSC Lawyers Incorporating Service Co., 701 Brazos, Suite 1050, Austin, Texas 78701.

6.     Centex Corporation is a Nevada corporation with its principal place of business located at 2728 N. Harwood Street, Dallas, Texas 75201. Centex Corporation may be served with process through its registered agent Corporation Service Co. d/b/a CSC Lawyers Incorporating Service Co., 701 Brazos, Suite 1050, Austin, Texas 78701.

7.     Centex Real Estate Corp. is a Nevada corporation with its principal place of business located at 2728 N. Harwood Street, Dallas, Texas 75201. Centex Real Estate Corp. may be served with process through its registered agent Corporation Service Co. d/b/a CSC Lawyers Incorporating Service Co., 701 Brazos, Suite 1050, Austin, Texas 78701.

8.     Centex Corporation and Centex Real Estate Corp. will be referred to collectively as "Centex."

9.     Weekley Homes, L.P. d/b/a David Weekley Homes ("Weekley") is a Delaware corporation with its principal place of business located at 1111 N. Post Oak Road, Houston, Texas 77055. Weekley may be served with process through its registered agent Corporation Service Co. d/b/a CSC Lawyers Incorporating Service Co., 701 Brazos, Suite 1050, Austin, Texas 78701.

10.     KB Home is a Delaware corporation with its principal place of business located at 10900 Wilshire Blvd., 7th Floor, Los Angeles, California 90024. KB Home may be served with process through its registered agent David B. Simons, 10990 Wilshire Blvd., Suite 700, Los Angeles, California 90024.

11.     e.KB, Inc. is a Delaware corporation with its principal place of business located at KB Home, 10900 Wilshire Blvd., 7th Floor, Los Angeles, California 90024. e.KB, Inc. may be served with process through its registered agent Corporation Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

12.     KB Home and e.KB, Inc. will be referred to collectively as "KB Home."

13.     Lennar Corporation is a Delaware corporation with its principal place of business located at 700 Northwest 107th Avenue, Miami, Florida 33172.   Lennar Corporation may be served with process through its registered agent CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

14.     Lennar.com, Inc. is a Florida corporation with its principal place of business located at 700 Northwest 107th Avenue, Miami, Florida 33172.  Lennar.com, Inc. may be served with process through its registered agent CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

15.     At times relevant to the facts of this litigation, Lennar Corporation was in the process of merging with U.S. Home Corporation ("U.S. Home"), another major national homebuilder.  When referring to any times during which Lennar Corporation and U.S. Home were merging, U.S. Home will be referred to as "U.S. Home," but its actions will be those of Lennar Corporation.

16.     Lennar Corporation, Lennar.com and U.S. Home will be referred to collectively as "Lennar."

17.     Pulte Homes, Inc. is a Michigan corporation with its principal place of business located at 100 Bloomfield Hills Pkwy., Suite 300, Bloomfield Hills, Michigan

48304. Pulte Homes, Inc. may be served with process through its registered agent CSC-Lawyers Incorporating Service, 601 Abbott Road, East Lansing, Michigan 48823.

18.     Pulte.com, Inc. is a Michigan corporation with its principal place of business located at 100 Bloomfield Hills Pkwy., Suite 300, Bloomfield Hills, Michigan 48304. Pulte.com, Inc. may be served with process through its registered agent CSC-Lawyers Incorporating Service, 601 Abbott Road, East Lansing, Michigan 48823.

19.     At or around the times relevant to the fact of this litigation, Pulte Homes, Inc. and Pulte.com were in the process of acquiring Del Webb, Inc., another major U.S. homebuilder. Del Webb is now a subsidiary of Pulte, Inc.

20.     Pulte Homes, Inc., Pulte.com and Del Webb, Inc. will be referred to collectively as "Pulte." When referring to any times during which Pulte and Del Webb were merging, Del Webb will be called "Del Webb," but its actions will be those of Pulte Homes, Inc. and Pulte.com.

21.     Standard Pacific Corp. d/b/a Standard Pacific Homes ("Standard Pacific") is a Delaware corporation with its principal place of business located at 15326 Alton Parkway, Irvine, California 92618. Standard Pacific may be served with process through its registered agent, Clay A. Halvorsen, 15326 Alton Parkway, Irvine, California 92618.

22.     Toll Brothers, Inc. ("Toll") is a Delaware corporation with its principal place of business located at 250 Gibraltar Road, Horsham, Pennsylvania 19044. Toll may be served with process through its registered agent CT Corporation System, 350 North St. Paul, Dallas, Texas 75201.

23.     Georgia-Pacific Corporation ("Georgia-Pacific") is a Delaware corporation with its principal place of business located at 133 Peachtree Street, N.E., Atlanta, Georgia 30303.  Georgia-Pacific may be served with process through its registered agent C T Corporation System, 1201 Peachtree St., NE, Atlanta, Georgia 30361.

24.     Hearth & Home Technologies Inc. ("Hearth & Home") is an Iowa corporation with its principal place of business located at 20802 Kensington Blvd., Lakeville, Minnesota 55044.  Hearth & Home may be served with process through its registered agent C T Corporation System Inc., 100 S. 5th Street, Suite 1075, Minneapolis, Minnesota 55402.

25.     Honeywell International Inc. ("Honeywell") is a Delaware corporation with its principal place of business located at 101 Columbia Road, Morris Township, New Jersey 07962.  Honeywell may be served with process through its registered agent Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

26.     Kohler Co. ("Kohler") is a Wisconsin corporation with its principal place of business located at 444 Highland Drive, Kohler, Wisconsin 53044.  Kohler may be served with process through its registered agent Herbert V. Kohler, Jr., 444 Highland Drive, Kohler, Wisconsin 53044.

27.     Masco Corporation ("Masco") is a Delaware corporation with its principal place of business located at 21001 Van Born Road, Taylor, Michigan 48180.  Masco may be served with process through its registered agent John R. Leekley, 21001 Van Born Road, Taylor, Michigan 48180.

28.     Overhead Door Corporation ("Overhead Door") is an Indiana corporation with its principal place of business at 2501 South State Highway 121, Suite 200,

Lewisville, Texas 75067. Overhead Door may be served with process through its registered agent CT Corporation System, 350 North St. Paul, Dallas, Texas 75201.

29. Owens Corning ("Owens") is a Delaware corporation with its principal place of business located at One Owens Corning Parkway, Toledo, Ohio 43659. Owens may be served with process through its registered agent CT Corporation System, 350 North St. Paul, Dallas, Texas 75201.

30. Progress Lighting Inc. ("Progress") is a Delaware corporation with its principal place of business at 584 Derby Milford Road, Orange, Connecticut 06477. Progress may be served with process through its registered agent Corporation Service Company d/b/a CSC–Lawyer Incorporating Service Inc., 701 Brazos Street, Suite 1050, Austin, Texas 78701.

31. Square D Company ("Square D") is a Delaware corporation with its principal place of business located at 1415 South Roselle Road, Palatine, Illinois 60067. Square D may be served with process through its registered agent Corporation Service Company d/b/a CSC–Lawyer Incorporating Service Inc., 701 Brazos Street, Suite 1050, Austin, Texas 78701.

32. Therma-Tru Corp. ("Therma-Tru") is an Ohio corporation with its principal place of business at 1750 Indian Wood Circle, Maumee, Ohio 43537. Therma-Tru may be served with process through its registered agent CSC-Lawyers Incorporating Service, 50 W. Broad Street, Suite 1800, Columbus, Ohio 43215.

33. Weyerhaeuser Company ("Weyerhaeuser") is a Washington corporation with its principal place of business at 33663 Weyerhaeuser Way South, Federal Way, Washington 98063-9077. Weyerhaeuser may be served with process through its

registered agent Claire S. Grace, 33663 Weyerhaeuser Way South, Federal Way, Washington 98003-9777.

34.    Whirlpool Corporation ("Whirlpool") is a Delaware corporation with its principal place of business located at 2000 North M-63, Benton Harbor, Michigan 49022-2692.   Whirlpool may be served with process through its registered agent Corporation Service Company d/b/a CSC-Lawyer Incorporating Service, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

35.    York International Corporation ("York") is a Delaware corporation with its principal place of business located at 631 South Richland Avenue, York, Pennsylvania 17403.  York may be served with process through its registered agent CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

## SUBJECT MATTER JURISDICTION

36.    This action arises in part under the patent laws of the United States, 35 U.S.C. §§ 271 and 281. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because certain of OLA's claims arise under the patent laws, 35 U.S.C. § 1, *et. seq*.

37.    This action also arises in part under the antitrust laws of the United States, 15 U.S.C. § 1.  The Court has subject matter jurisdiction under 15 U.S.C. § 15 and 28 U.S.C. § 1331 because certain of OLA's claims arise under the antitrust laws. The Court also has subject matter jurisdiction under 15 U.S.C. § 25 because this action affects the flow of interstate commerce and is brought to restrain violations of 15 U.S.C. § 1.

38.    The Court has supplemental jurisdiction over all of OLA's other claims under 28 U.S.C. § 1367 because those causes of action are based on state law and are

substantially related to and arise from a common nexus of operative facts as the claims over which the Court has original jurisdiction.

## PERSONAL JURISDICTION

39.     This Court has personal jurisdiction over the defendants because the defendants do business throughout the United States, including within the State of Texas and the Eastern District of Texas, *inter alia*, by using, selling and offering for sale infringing products and services including but not limited to Envision (as defined below).

## VENUE

40.     Venue is proper in the Eastern District of Texas under 28 U.S.C. §§ 1391 (b) and (c) and 1400(b) because several defendants reside and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.   More specifically, the infringing Envision system is used, sold and offered for sale (directly or through resellers) within this judicial district and is available to be used in this judicial district.   Additionally, Beazer, Centex, Weekley, KB Homes, Lennar, Pulte, Standard Pacific and Toll all construct and sell homes within the Eastern District of Texas.

## FACTUAL ALLEGATIONS

### *Definition of Terms*:

41.     OLA will use the following italicized defined terms stated in ¶¶ 42 through 48 in this Complaint.

42.     "*BHI Consortium Owners*," for purposes of this Complaint, means Beazer, Capital Pacific, Centex, Weekley, KB Home, Lennar, Pulte, Standard Pacific and Toll, together with any other entities that have an ownership interest in BHI.

43.　*"NHT Consortium Owners"* means BHI, Georgia-Pacific, Hearth & Home, Honeywell, Masco, Owens, Progress, Square D, Therma-Tru, Weyerhaeuser, Whirlpool and York, together with any other entities that have an ownership interest in NHT.

44.　*"BHI/NHT Joint Enterprise"* means BHI, Beazer, Capital Pacific, Centex, Weekley, Georgia-Pacific, Hearth & Home, Honeywell, KB Home, Lennar, Masco, Owens, Progress, Pulte, Standard Pacific, Toll, Square D, Therma-Tru, Weyerhaeuser, Whirlpool, York and, after its creation, NHT.　*BHI/NHT Joint Enterprise* also includes any other entities that have an ownership interest in BHI or NHT.

45.　*"Defendants Bound to Confidentiality"* means BHI (¶¶ 161, 162 and 164); Pulte/Del Webb (¶¶ 89, 90, 91, 96, 99, 106 and 107), Centex (¶¶ 116, 118 and 122), Lennar/U. S. Home (¶¶ 123, 124, 125 and 126), Beazer (¶ 144), Toll (¶ 152), Capital Pacific (¶ 154) and Honeywell (¶ 156).

46.　*"Wrongful Acts"* means the unlawful and tortious acts against OLA for the purpose of:

a.　infringing the '455 patent;

b.　infringing the '553;

c.　misappropriating OLA's confidential, proprietary or non-public business information and/or trade secrets by violating the Illinois Trade Secrets Act and/or by common law fraud and/or

d.　violating 15 U.S.C. § 1.

47.　"*Envision*" means the options management system built by *BHI/NHT Joint Enterprise*. In simple terms, *Envision* is a web-based product that functions as a virtual

design center where homebuyers can select options for their new home. Envision is also known as envisionoptions.com.

48. *"Builder's On-Line Assistant"* is the title of the '455 and '553 patents. As used in this complaint, *Builder's On-Line Assistant* means OLA's options management system and business plans and designs that were OLA's confidential, proprietary or non-public business information and/or trade secrets until July 25, 2002 when the United States Patent and Trademark Office ("USPTO") published Fogelson's second patent application that resulted in the '553 patent. *Builder's On-Line Assistant* is one embodiment of the inventions described in the '455 and '553 patents.

***Fogelson, OLA and the patents:***

49. On January 14, 2000, Fogelson filed a patent application, Application No. 09/483,579, that would eventually result in the '455 patent.

50. Between January 14 and 17, 2000, Fogelson attended the International Builders' Show sponsored by the National Association of Home Builders. At that show, he visited with several homebuilders and passed out business cards that invited persons to visit HomeBuilderShowroom.com, a website he created to allow people to learn general information about *Builder's On-Line Assistant*.

51. On or about February 17, 2000, Fogelson filed an application for registration of the trademarks "Home Builder Showroom," "HomeBuilderShowroom.com" and "Home Buyer Showroom" and other related trademarks with the USPTO.

52.    On March 8, 2000, Fogelson formed OLA as an Illinois limited liability company and began doing business under its registered assumed name of "Home Builder Showroom."

53.    From March 8, 2000 to the present, OLA has maintained HomeBuilderShowroom.com where OLA presented general and non-confidential information about *Builder's On-Line Assistant*.  HomeBuilderShowroom.com informed visitors how to contact OLA directly about *Builder's On-Line Assistant*.

54.    For those that sought more information, OLA offered a confidential Online Demonstration ("Online Demo") of the initial *Builder's On-Line Assistant*'s designs, operations, methods and processes.  The Online Demo was a series of screen shots, but was not interactive.

55.    In order for a visitor to see the Online Demo, OLA required the visitor to agree to be bound by a confidentiality agreement ("Notice & Agreement") that contained the following terms or substantially similar information and terms:

Notice & Agreement:

By filling out this form and proceeding to view our demo, you understand and agree to be bound by this agreement that the information contained is confidential and proprietary. You will not disclose or use this information without the expressed written permission of OLA, llc.

You are allowed to view our site demo in order to consider a business opportunity with us and that this opportunity is good and valuable consideration in acceptance with the terms of this confidentiality agreement.

You also represent that the information in this form is materially true and correct.

By submitting this form you indicate your acceptance.

© OLA, llc.
Patent pending

("Notice & Agreement," attached as **Exhibit A**).

56.     Additionally, in order for a visitor to see OLA's Online Demo, OLA required visitors to enter their name, address and telephone number.  OLA requested the visitor to enter the number of homes built per year, average cost of the homes, estimated average upgrades, level of interest, and whether they were in the building or manufacturing trades.  OLA's online for also offered a place to enter or select a comment.

57.     Finally, in order for a visitor to see the Online Demo, OLA required the visitor to click a "Select" button.

58.     Each     page     of     the     Online     Demo     contained     this     notice: "HomeBuilderShowroom.Com, Patent pending, © 2000 All rights reserved."

59.     Each page of the Online Demo on HomeBuilderShowroom.com contained the notice stated in ¶ 58 and on the left side bar, as well as the Notice & Agreement.

60.     From HomeBuilderShowroom.com, the visitor knew that the Notice & Agreement he or she agreed to was with an Illinois entity.

61.     The information contained in the Online Demo was confidential, proprietary or non-public business information and/or trade secrets, *i.e.*, information not generally known and information that gave OLA a competitive advantage.  This information was not readily ascertainable by proper means except to persons that agreed to be bound by the Notice & Agreement.

62.     Once a person agreed to be bound to the Notice & Agreement, OLA sent

that person the following automated message:

> Thank you for contacting www.HomeBuilderShowroom.com for your
> customized and private showroom.
>
> * * *
>
> The next step is for us to discuss in detail your needs and the services we
> can provide. To expedite this process I will be calling you within the next 7
> days or you can reach me at 800.970.2227.
>
> Following our conservation if we wish to precede your request will
> reconfirm our confidentiality agreement (submitted by you per the online
> "Demo") and we will provide you with our agreement and pricing
> information. We understand and value your business and the unique
> standards and upgrade products and pricing involved. Thus, we take
> special care to protect your information just as we do ours. (Please feel
> free to inquire how). Likewise, all of our forms and exciting new work are
> proprietary and subject to strict confidentiality.

63.     On January 24, 2001, Fogelson filed a second patent application,

Application No. 09/768,476, which was based upon the application that became the

'455 patent. Application 09/768,476 would eventually result in the '553 patent.

64.     On several occasions prior to July 25, 2002, detailed below, OLA made

presentations of *Builder's On-Line Assistant* (in person or by WebEx) to many of the

*BHT/NHT Joint Enterprise* members.     OLA's presentations always included a

PowerPoint presentation, and often contained a password protected "working model"

presentation, a subcontractors' presentation and/or a business model presentation. For

simplicity, these presentations will be called "PowerPoint presentation(s)."

65.     OLA's PowerPoint presentations contained much more information about

*Builder's On-Line Assistant* than the Online Demo. The PowerPoint presentations were

confidential, proprietary or non-public business information and/or trade secrets, *i.e.*,

information not generally known and information that gave OLA a competitive advantage. This information was not readily ascertainable by proper means.

66. Each of OLA's PowerPoint presentations stated: "Confidential - Patent Pending (c) 2000 [2001]" and "Please respect the confidential nature of this material. (c) 2000 [2001] All rights reserved to OLA,llc. Patent Pending."

67. On July 25, 2002, the USPTO published Fogelson's second patent application (09/768,476). The USPTO did not publish Fogelson's first patent application (09/483,579).

68. At all times prior to July 25, 2002, the date the USPTO published the application that became the '553 patent, OLA took reasonable steps under the circumstances to maintain the secrecy of its confidential, proprietary or non-public business information and/or trade secrets, specifically, *Builder's On-Line Assistant*.

69. On July 11, 2006, the USPTO issued the '455 patent, titled "Builder's On-Line Assistant," to inventor Fogelson. A true and correct copy of the '455 patent is attached hereto as **Exhibit B**.

70. On August 7, 2007, the USPTO issued the '553 patent, titled "Builder's On-Line Assistant," to inventor Fogelson. A true and correct copy of the '553 patent is attached hereto as **Exhibit C**.

71. OLA invested considerable sums in developing and marketing *Builder's On-Line Assistant*.

72. Fogelson has assigned the '553 and '455 patents to OLA.

73. OLA owns all exclusive rights under the both the '455 and '553 patents, including the exclusive right to license the patents and to seek all remedies for all past, present, and future infringement thereof.

### Builders Homesite, Inc.:

74. BHI was incorporated in Delaware on March 20, 2000 and has its principal place of business in Austin, Texas.

75. BHI announced its formation to the public on March 27, 2000.

76. Originally, BHI's stated purpose was to create a website that would provide "the most comprehensive listing of new homes available throughout the country." At that time, BHI did not have any products similar to what became the '455 and '553 patents and it did not then intend to create such a similar product.

77. BHI's first product was NewHomeSource.com, a new home search and listing site.

78. According to BHI's filings with the State of Texas, BHI's initial owners included Lennar (13.20%), Pulte (11.40%), KB Home. (11.09%), D.R. Horton, Inc. (10.59%) and Centex (10.33%). Combined, they owned 57.42% of BHI.

79. According to BHI's September 10, 2007 filings with the State of Texas, BHI's current owners include Lennar (15.27%), Pulte (19.07%), KB Home (13.38%) and Centex (11.96%). Combined, they owned 59.68% of BHI.

80. Because Beazer and Weekley are represented on BHI's board of directors, OLA alleges that they are also owners of BHI.

81.     Because Toll, Standard Pacific, Weyerhaeser and Capital Pacific are represented on NHT's board of directors, it is alleged that they are also owners of BHI.

82.     Other builders unknown to OLA at this time may also be owners of BHI.

83.     By September 26, 2001, BHI reported that the following homebuilders were members of its consortium:  American Heritage Homes, Beazer, Capital Pacific, Centex, D.R. Horton, Inc., Weekley, Del Webb, The Drees Company, Gateway Homes, Hammonds Homes, Highland Homes, Hovnanian Enterprises, Inc., John Wieland Homes, John Laing Homes, KB Home, Lennar, McGuyer Homebuilders, Inc., M.D.C. Holdings, Medallion Homes, Morrison Homes, Neumann Homes, Orleans Homebuilders, Inc., Perry Homes, Pulte, Ryan Building Group, The Ryland Group, Inc., Schuler Homes (now a part of D. H. Horton), Signature Homes, Michael Sivage Homes, Standard Pacific, Toll and Village Homes.

84.     BHI is a consortium now made up of 36 of the nation's largest homebuilders representing between $80 and $100 billion in new home sales each year.

85.     The 36 homebuilders that are currently believed to be part of the BHI Consortium  include Aston Woods Homes, Beazer, Capital Pacific, Centex, Crosswinds Communities, Weekley, DeLuca Homes, GL Homes, Gateway Homes, Highland Homes, John Laing Homes, John Wieland Homes, K. Hovnanian, KB Home, Kimball Hill Homes, Lennar, M/I Homes, MHI McGuyer Homebuilders, Inc., Medallion Homes, Mercedes Home, Meritage Homes, Orleans Homebuilders, Inc., Perry Homes, Pulte, Richmond American Homes, Ryan Building Group, SheaHomes, Signature Homes, Standard Pacific Homes, Taylor Morrison, The Drees Company, The Ryland Building Group, Inc., Technical Olympic USA, Inc., Toll, Village Homes and Weyerhaeuser.

*Original Complaint, page 17.*

86.     The current members of BHI's board of directors are Richard Dugas, Jr. (CEO, Pulte), Tim Eller (Chairman, CEO, Centex), Ian McCarthy, (President, CEO, Beazer), Stuart Miller (President, CEO, Lennar), Jeffrey Mezger (President, CEO, KB Home), David M. Weekley (CEO, Weekley) and Tim Costello (Chairman of the Board, President, CEO, BHI).

87.     Other individuals that have previously served on BHI's board of directors include Don Tomnitz (Chairman, CEO, D. R. Horton), Bruce Karatz (Chairman, CEO, KB Home) and Mark O'Brien (President, CEO, Pulte).

**Builders' contacts with OLA:**

88.     On numerous occasions, OLA met with many builders and manufacturers to discuss and offer *Builder's On-Line Assistant* for a potential business opportunity.

**Pulte/Del Webb:**

89.     On June 14, 2000, Pulte (Michael Disler, VP) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

90.     On September 5, 2000, Pulte (Ralph Raciti, CIO) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.  In his "comments" section of the Notice & Agreement, Mr. Raciti, selected "Great Idea - Please Contact Me Soon."

91.     On September 14, 2000, Del Webb (Tom Lucas, VP & GM) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.   In his "comments" section of the Notice & Agreement, Mr. Lucas, selected "Great Idea - Please Contact Me Soon."

92.    On September 14, 2000, OLA sent Del Webb (Tom Lucas, VP & GM) an email that contained the statement in ¶ 62.

93.    On September 15, 2000, OLA sent Del Webb (Tom Lucas, VP & GM) the following email:

> Thanks again for your reply and your phone call. I think we have a good plan to get to know each other better including:
>
> 1.) Exchange N.D.A.'s (attached) & explore collaboration
>
> 2.) Convey our data-engine work & vendor Commerce Quest (see CC to them. I will need to talk to Al Preston of Commerce Quest first). This could also mean our high-level documentation.
>
> 3.) Explore a meeting with top builders to collaborate on systems or protocols - Probably in San-Fran at the I-housing. I will float this to several people and CC you.
>
> After our NDA we may want to schedule a conference call with us and our technology people. The soonest I can do this is 1:00 pm or later on Thursday, Sept 21. Please let me know if you would like us to put this together. In any event, I will follow up with you about then (or sooner if you need).
>
> Bruce Fogelson,
> President & C.E.O.
> Paramount Homes & OLA,llc

94.    The email in ¶ 93 contained the following footer: "Confidential: All correspondence is confidential and intended for addressee only. Please respect the confidential nature of this transmission Patent Pending. (c) 1999, 2000 to OLA, llc." Most, if not all emails from OLA contained this or a similar statement.

95.    On September 20, 2000, OLA sent Pulte (Michael Disler, VP) an email that contained the statement in ¶ 62.

96.    On October 6, 2000, KPMG Consulting (Sergio Raynal, Senior Manager) visited HomeBuilderShowroom.com twice, twice agreed to be bound by the Notice &

Agreement and twice reviewed OLA's Online Demo. In his "comments" section of the first Notice & Agreement, Mr. Raynal, selected "Great Idea - Please Contact Me Soon."

97.    From October 6, 2000 forward, KPMG Consulting (Sergio Raynal, Senior Manager) acted on behalf of and in concert with Del Webb.

98.    On October 10, 2000, OLA sent KPMG Consulting (Sergio Raynal, Senior Manager) the following email:

> Please be so kind as to contact me about your request seeing as how you do not seem to be a home builder. I would be very glad to talk with you about our service and have left a message at your office. In the interim, I am attaching a copy of our standard Demo-Reply to builders. Our Preview Partner agreement, like the demo log-in terms, are strictly confidential. However, I'm sure that I will have no problem forwarding that to you after we talk.

99.    On October 24, 2000, Pulte (Diana Zoellner) visited HomeBuilderShowroom.com for a third time, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

100.    On October 31, 2000, OLA sent Del Webb (Tom Lucas, VP & GM, Del Webb and Sergio Raynal, Senior Manager, KPMG Consulting) the following email:

> Dear Tom Lucas & Sergio Raynal,
>
> Thank you again for contacting www.HomeBuilderShowroom.com
>
> We are very pleased to put together the enclosed Power Point Presentation to kick-off our phone-conference scheduled for 10:00 am Mountain time on November 1st, 2000. Please feel free to contact me at 1-800-970-2227 or we will be calling you.
>
> We hope that this will give you an introduction to www.HomeBuilderShowroom.com and provide you with a place and process through which you and your homebuyers can select their own "standards and extras on line (sm)".
>
> It is my hope that we can "talk" you through this power point - slide by slide - long distance. (I secretly hope that it either goes so well or so badly

that you would like us to fly down and do the presentation again in person, either way, we look forward to meeting you in person).

I may be asking our technology partners at Commerce Quest to be joining us on the phone as well as Robert Johnston, our president and my self, Bruce Fogelson, CEO & Founder. Our people's e-mails are attached hereto.

In addition to this power point we may direct you to some of our other related web-concepts in development. I am told that you have conference and on-line facilities where you are.

HomeBuilderShowroom.com is customized for each builder and works well alone or in conjunction with your current showroom and sales people and can integrate into your legacy systems and those of your venders.

Our web site gives a brief preview of our service to our builder-customers and I hope you take the site tour.

Each customer is a unique (and confidential) solution. We have various tools that serve the broad range of homebuilders, selections and new home types - big or small. We look forward to seeing what fits best for you.

Although we want your business we want your satisfaction even more. Thus, we guarantee our work to your satisfaction at every step. We are also to meet and beat any competition on the horizon. Bye the way, we're ALL on the horizon. We want to know what you need and expect and build our services as a reality, not a promise.

This presentation is a private showing for you only and strictly confidential. If you can not abide by our wish for confidentiality then I would respectfully request that you not open this presentation, erase it and inform us not to continue.

101.   On October 31, 2000, OLA sent an email with an attached PowerPoint presentation to Del Webb (Tom Lucas, VP & GM, Del Webb and Sergio Raynal, Senior Manager, KPMG Consulting).  The email stated, "This presentation is a private showing for you only and strictly confidential.  If you cannot abide by our wish for confidentiality then I would respectfully request that you not open this presentation, erase it and inform us not to continue."

*Original Complaint, page 21.*

102.  OLA's October 31, 2000 PowerPoint presentation delivered to Del Webb was prepared in order to show OLA's technology and in a format customized for Del Webb and its business. It contained OLA's confidential, proprietary or non-public business information and/or trade secrets.

103.  The first page of OLA's October 31, 2000 PowerPoint presentation to Del Webb contained the following statement: "October 2000, Confidential - Patent Pending (c) 2000."

104.  The last page of OLA's October 31, 2000 PowerPoint presentation to Del Webb contained the following statement: "Please respect the confidential nature of this material. (c) 2000 All rights reserved to OLA,llc. Patent Pending."

105.  On November 1, 2000, OLA conducted a phone call with Del Webb (Tom Lucas, and Sergio Raynal, KPMG Consulting) to discuss the October 31, 2000 PowerPoint presentation.

106.  On November 16, 2000, Del Webb (Vernon Chi, KPMG Consulting) visited HomeBuilderShowroom.com three times and each time agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

107.  On November 17, 2000, Del Webb (Christine Lewis, Design Manager) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

108.  On December 5, 2000, Pulte (Teresa Dooley and Nancy Ziemski) asked OLA to present it with an online demonstration of OLA's product.

109.  On December 6, 2000, OLA responded to Pulte's request for a Online Demonstration with the following message sent by email and facsimile:

Dear Teresa Dooley

Thank you for considering www.HomeBuilderShowroom.com for a customized home builder showroom. HomeBuilderShowroom provides our builder/clients with a place and process through which builders and their homebuyers can select their own "standards and extras on line (sm)".

Thank you also for the Request for Demonstration I received today. We are very much interested in providing a demonstration. Please consider this our intent to participate per the Request for Demonstration due by this Friday per your cover memo.

I presume that we will schedule a session per page #7. We would very much like Session #18 or 19, since I will be out of town on holiday most all of the other dates. Please be so kind as to verify the best date and time with us.

I will be somewhat out of touch the balance of this week but can be reached via my mobile phone at 773-383-0383 since I will be at the I-Housing conference in San Francisco. Please let any one who may be attending know that I'd like to meet them if they will be attending also.

In the interim, please visit our web site at www.HomeBuilderShowroom.com and tour our demo. We can arrange a live demo on line with you too.

We provide a unique "showroom" on line for each builder and systems that work well alone or in conjunction with your current showroom and sales people or legacy software systems.

We look forward to seeing what fits best for you company each home development(s).

Your reply and request will re-confirm our confidentiality agreement (submitted by you per the online "Demo"). We understand and value your business and the unique standards and upgrade products and pricing involved.

Thus, we take special care to protect your information just as we do ours.

(Please feel free to inquire how). Likewise, all of your and our forms and work are proprietary and subject to strict confidentiality.

110.   On December 6, 2000, Pulte (Teresa Dooley) sent the following email to OLA:

> The latest available session is Thursday 12/21/00 - I hope this will work.  I will call you shortly to see if you are available by cell.

111.   On December 6, 2000, OLA sent the following email to Pulte (Teresa Dooley):

> Thank you for the prompt reply.  I am going out of town on the night of the 21st for holiday.  What time on the 21st were you thinking?  We may be able to fly in and out for a mid-day presentation.
>
> I am somewhat "pleading" with you to add us on the end.  Obviously you have scheduled your demonstrations during the year end holiday madness and we only just yesterday received your package although have been in contact with others in your fine firm for months.  I am hoping that you can still see if you can add us on the end by pleading for special dispensation?

112.   On January 4, 2001, Pulte (Teresa Dooley) sent OLA a request for proposal in anticipation of a January 10, 2001 meeting.

113.   On January 10, 2001, OLA made a PowerPoint presentation to Pulte.  It was essentially the same presentation referred to in ¶¶ 100 and 101, above, but customized for Pulte.

**Centex:**

114.   On July 10, 2000, OLA received the following email from Centex (Maria Despaltro, Design Studio Manager)

> I recently received your mailer about Home Builder Showroom and would like to set aside some time to meet you.  Can you please contact me at your earliest convenience.

115. On September 14, 2000, OLA sent the following email to Centex (Dana Warren, Land Acquisition Manager) offering an on-line presentation of its product. The email contained the following statement:

> Your reply and request will re-confirm our confidentiality agreement (submitted by you per the online "Demo"). We understand and value your business and the unique standards and upgrade products and pricing involved. Thus, we take special care to protect your information just as we do ours. (Please feel free to inquire how). Likewise, all of your and our forms and work are proprietary and subject to strict confidentiality.

116. On January 25, 2001, Centex (Dana Warren, Land Acquisition Manager) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

117. On January 25, 2001, OLA sent Centex (Dana Warren, Land Acquisition Manager) an email that contained the statement in ¶ 62.

118. On January 27, 2001, Centex (Doris O'Neal, Mgr., Design Center) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

119. On January 28, 2001, OLA sent the following an email to Centex (Dana Warren, Land Acquisition Manager) offering an on-line presentation of its product. The email contained the following statement:

> Your reply and request will re-confirm our confidentiality agreement (submitted by you per the online "Demo"). We understand and value your business and the unique standards and upgrade products and pricing involved. Thus, we take special care to protect your information just as we do ours. (Please feel free to inquire how). Likewise, all of your and our forms and work are proprietary and subject to strict confidentiality.

120. On January 28, 2001, OLA sent Centex (Doris O'Neal, Mgr., Design Center) an email that contained the statement in ¶ 62.

121.  On February 6, 2001, OLA sent Centex (Doris O'Neal) an email that contained the statement in ¶ 62.

122.  On February 27, 2001, Centex (Chris Wicki, Director of Design) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.  In his "comments" section of the Notice & Agreement, Mr. Wicki, selected "Great Idea - Please Contact Me Soon."

**Lennar/U.S. Home:**

123.  On August 30, 2000, U.S. Home (Brian Hutt, Director of Design Studios) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.  In his "comments" section of the Notice & Agreement, Mr. Hutt, selected "Great Idea - Please Contact Me Soon."

124.  On October 30, 2000, U.S. Home (Brian Hutt, Director of Design Studios) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

125.  On December 4, 2000, U.S. Home (Erin Hunsinger, Reg. Design Mgr.) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

126.  On December 13, 2000, Lennar (Charles Dragicevich, VP) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.  In his "comments" section of the Notice & Agreement, Mr. Dragicevich, selected "Great Idea - Please Contact Me Soon."

127.  On December 13, 2000, OLA sent U.S. Home (Brian Hutt, Director of Design Studios) the following email:

Attached please find a letter, preview partner agreement, confidentiality agreement and the following address to our confidential on-line interactive demo.

I am sending you all this and our power point on cd disk and zip disk by next day. Please confirm.

To go to the demo go to http://finance.commercequest.com:81
Log In as [XXXX] – Password: [XXXX] -- Please do not distribute this access info. Please let me know if I can walk you through anything.

You can also get into our e-commerce partner, Commerce Quest's, demo by going to www.BigLogs.com and clicking on the right side. The Big Logs password and user name are both "BigLogs" and they are case sensitive (capital B and capital L - One word "BigLogs").

128. On December 14, 2000, OLA sent Lennar (Charles Dragicevich) and U.S. Home (Brian Hutt, Director of Design Studios) the following email:

Thank you for contacting www.HomeBuilderShowroom.com for a customized and private home builder showroom. Home Builder Showroom provides our builder/clients with a place and process through which builders and their homebuyers can select their own "standards and extras on line (sm)".

I want you to know that we have also been in touch with Brian Hutt and others of U.S. Home Corp. I know that you are involved with U.S. Home Corp. and I believe that Lennar and U.S. Home may soon be meeting to discuss your strategies. We flew to meet them a few weeks ago and presented our on-line interactive demo just this week. A copy of our full presentation via CD and Zip disk is en-route to them today. Not meaning to over state the case, but I believe that Mr. Hutt and his staff were very impressed. I am CC-ing him with this note to you along with CC-ing you with my transmittal to him from yesterday.

We would be very interested in walking you through our product/service on-line and over the phone or to fly out and meet with you in person (as we have been with many of the other big builders in the US recently.)

For now, allow me to further introduce Home Builder Showroom (HBS) to you. HBS is customized for each builder/project/model and works well alone or in conjunction with your current showroom and sales people. In fact its best features are designed to support typical big builder showrooms and sales people. Our web site gives a brief preview of our service to our builder-customers, however, each customer is a unique

(and confidential) solution. We have various tools that serve the broad range of homebuilders, selections and new home types - big or small.

Charles, you mentioned in your memo "We are constructing our own Community Portal. This might be a complement to it." Yes, we have a back end service strategy which we call our home buyers "Home Home Page". (go to www.HomeHomePage.com). This is more about product support in the after market than it is about content or a portal but we are designed to "drop-in" our key product info into other systems. Other parts of our market strategy are available to preview through www.OnLineAssistant.net.

My other e-mail contains further info requested by Mr. Hutt. Your reply and request will re-confirm our confidentiality agreement (submitted by you per the online "Demo"). We understand and value your business and the unique standards and upgrade products and pricing involved. Thus, we take special care to protect your information just as we do ours. (Please feel free to inquire how). Likewise, all of your and our forms and work are proprietary and subject to strict confidentiality. Although we want your business we want your satisfaction even more. Thus, we guarantee our work to your satisfaction at every step.

129. On December 14, 2000, OLA sent Lennar (Charles Dragicevich) and U.S. Home (Brian Hutt, Director of Design Studios) the following email:

This is e-mail 2 of 2. Please read my prior introduction first. I believe that Lennar and U.S. Home Corp are or will be comparing strategies. Brian Hutt is our key contact at U.S. Home and had asked for this more detailed info after we had presented our product/services to him. We are anxious to present the same to you, which we can do [on] line in a teleconference or inperson by visiting you.

I do not know the various roles of you and Brian but full disclosure seems to be the best policy so I am putting you to together via these CC's and I will follow up with you both.

130. On December 14, 2000, OLA sent a PowerPoint presentation of HomeBuilderShowroom.com to Lennar and U.S. Home (Brian Hutt, Director of Design Studios).

131. OLA's December 14, 2000 PowerPoint presentation to Lennar and U.S. Home was prepared to show OLA's technology and in a format customized for Lennar

and U.S. Home and their business. It contained OLA's confidential, proprietary or non-public business information and/or trade secrets.

132.   The first page of OLA's December 14, 2000 PowerPoint presentation to Lennar and U.S. Home contained the following statement: "November 2000, Confidential - Patent Pending (c) 2000."

133.   The last page of OLA's December 14, 2000 PowerPoint presentation to Lennar and U.S. Home contained the following statement: "Please respect the confidential nature of this material which is to be destroyed or returned after 1 viewing." (c) 2000 All rights reserved to OLA,llc. Patent Pending."

134.   On December 14, 2000, Lennar (Charles Dragicevich) sent OLA and U.S. Home (Brian Hutt, Director of Design Studios) the following email:

> I am seeing Brian tomorrow and will get to your attachments this weekend. It may be Tuesday before I can get back to you, but thanks for the quick reply.

135.   On December 14, 2000, U.S. Home (Brian Hutt, Director of Design Studios) sent OLA the following email:

> I look forward to receiving the power point presentation on CD tomorrow. I have not had the opportunity to review the attachments that you sent me but I will review them tomorrow prior to our meeting.

> Thanks!

136.   On December 14, 2000, OLA sent U.S. Home (Brian Hutt, Director of Design Studios) the following email:

> Hi Brian. I was contacted by Lennar this AM. I sent him a reply and told him about us and have CC'ed him and you on both. I hope that this is OK. I know that your time is tight before your meeting later this week and I can hardly speak. They do not have the power point that you will get this AM. I took the liberty of dropping both your U.S. Home logo and the Lennar logo in our presentation I e-mailed you. They appear on page one and 12 (I

think). If you do not want them to appear just click on each image with your right mouse button and remove.

Once again. I hope that I did not over step my place by cross-connecting you with the Lennar guy. You can see who and what he contacted us with on the bottom of the first memo to him.

137.  On December 29, 2000, U.S. Home (Brian Hutt, Director of Design Studios) sent OLA the following email:

Bruce:

I have finally had the opportunity to review the information you have sent me and have left a voice mail message with Chuck Dragicevich to discuss your proposal further. I will be out of the office Jan 2nd and the morning of the 3rd and hopefully, will speak to Chuck shortly thereafter regarding the proposal.

I have noted some questions on the proposal but nothing major at this time.

138.  On December 29, 2000, OLA sent U.S. Home (Brian Hutt, Director of Design Studios) the Preview Partnership Agreement.

139.  On March 9, 2001, OLA met with U.S. Home (Brian Hutt, Director of Design Studios; Tom Brick, Director of Construction and Quality Initiatives; Jim Messina, Information Services Department; Tim Crosby, Information Services Department; Rick Peters, Information Services Department; Mike Richardson, Regional President; and a representative of the Corporate Communications Department) and gave a detailed explanation of OLA's product.

140.  On March 9, 2001, OLA made its PowerPoint presentation to the individuals identified in ¶ 139.

141.  OLA's March 9, 2001 PowerPoint presentation to Lennar and U.S. Home was prepared in order to show OLA's technology and in a format customized for Lennar

and U.S. Home and their business. It contained OLA's confidential, proprietary or non-public business information and/or trade secrets.

142.   The second page of OLA's March 9, 2001 PowerPoint presentation to Lennar and U.S. Home contained the following statement: "Feb. 2001, Confidential - Patent Pending (c) 2000 & 2001."

143.   The last page of OLA's March 9, 2001 PowerPoint presentation to Lennar and U.S. Home contained the following statement: "Please respect the confidential nature of this material which is to be destroyed or returned after viewing. (c) 2000 All rights reserved to OLA,llc. Patent Pending."

**Beazer:**

144.   On September 13, 2000, Beazer (Paul Stern, National Purchasing Mgr.) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo. In his "comments" section of the Notice & Agreement, Mr. Stern, selected "Great Idea - Please Contact Me Soon."

145.   On September 20, 2000, OLA sent Beazer (Paul Stern) an email that contained the statement in ¶ 62.

146.   November 17, 2000, OLA sent the following email to Beazer (Peter Simons):

> We look forward to presenting www.HomeBuilderShowroom.com and our related technology to you and your associates at Beazer Homes on Wed. Nov. 29, 2000 at 2:00 pm your time via www.webex.com conferencing. please copy this memo to your associates e-mail and back to us and we will pick up their e-mail addresses and set everyone up for the web-conference call. Below is a brief description of our service but our web-site says more and has a brief demo.  when we meet on line in two weeks you will see the working site.  'till then, happy holiday

* * *

Your reply and request will re-confirm our confidentiality agreement (submitted by you per the online "Demo"). We understand and value your business and the unique standards and upgrade products and pricing involved. Thus, we take special care to protect your information just as we do ours. (Please feel free to inquire how). Likewise, all of your and our forms and work are proprietary and subject to strict confidentiality.

147. On November 29, 2000, OLA presented its PowerPoint presentation to Beazer (Peter Simons) through an on-line live interactive WebEx.com presentation.

148. OLA's presentation to Beazer showed OLA's technology and format, and was customized specifically for Beazer and its business.

149. OLA's November 29, 2001 PowerPoint presentation to Beazer was prepared in order to show OLA's technology and in a format customized for Beazer and its business. It contained OLA's confidential, proprietary or non-public business information and/or trade secrets.

150. On the first page of OLA's PowerPoint presentation to Beazer was the following statement: "November 2000, Confidential - Patent Pending (c) 2000."

151. On the last page of OLA's PowerPoint presentation to Beazer was the following statement: "Please respect the confidential nature of this material which is to be returned or destroyed immediately after 1 viewing. Please verify with sender. (c) 2000 All rights reserved to OLA, llc. Patent Pending."

**Toll:**

152. On October 23, 2000, Toll (Andrew Terhune, Manager) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo. In his "comments" section of the Notice & Agreement, Mr. Terhune, selected "Great Idea - Please Contact Me Soon."

153. On October 23, 2000, OLA sent Toll (Andrew Terhune, Manager) an email that contained the statement in ¶ 62.

**Capital Pacific:**

154. On September 25, 2000, Capital Pacific (Paula Wilson, Executive Assistant to President) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

155. On September 26, 2000, OLA sent Capital Pacific (Paula Wilson, Executive Assistant to President, and Craig Foster, President) the following email, along with a confidential PowerPoint presentation.

> Dear Paula, Thanks for the chat today! I am e-mailing you our standard Preview Partner Agreement which talks about what we do and how we work with you. I hope that this is helpful for now.
>
> Thank you for providing us with some of your builder type and size info. Please remember, as a big builder, we are anxious to arrange special pricing.
>
> Also attached is a Power Point which, along with our web site, will give you a very good idea of what we do.

**Manufacturer:**

**Honeywell:**

156. On July 2, 2001, Honeywell (Andrew Hules, Zoning Business Unit) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

**BHI contacts with OLA:**

157. On November 3, 2000, OLA sent the following email to BHI (Tim Costello, COB, President and CEO and Al Mannes):

Thanks for the chat and directing me next to Al Mannes. And thank you for contacting www.HomeBuilderShowroom.com.

HomeBuilderShowroom provides our builder/clients with a place and process through which builders and their homebuyers can select their own "standards and extras on line (sm)". But, that's just the beginning. HomeBuilderShowroom.com is customized for each builder and works well alone or in conjunction with current showrooms, sales people, legacy systems and has deep e-commerce capacity.

We would like to schedule a phone meeting and power point presentation to introduce you to what we do.

Our web site gives a brief preview of our service to our builder-customers, however, each customer is a unique (and confidential) solution. We have various tools that serve the broad range of homebuilders, selections and new home types - big or small. We look forward to seeing what fits best for each type of home development you represent.

By sending us a project brochure, standards and extras selections and what ever form you may like to use we will provide you with your own web-site and showroom on-line.

Please stop by our web-site www.HomeBuilderShowroom.com and view our Demo. The Demo is just to begin to show you what we can do. Your reply and request will re-confirm our confidentiality agreement (submitted by you per the online "Demo"). We understand and value your business and the unique standards and upgrade products and pricing involved. Thus, we take special care to protect your information just as we do ours. (Please feel free to inquire how). Likewise, all of your and our forms and work are proprietary and subject to strict confidentiality.

Although we want your business we want your satisfaction even more. Thus, we guarantee our work to your satisfaction at every step. Please feel free to call us at 1-800-970-2227 with any questions and thank you again for contacting www.HomeBuilderShowroom.com

158.   On November 8, 2000, OLA sent the following email to BHI  (Tim Costello,

COB, President and CEO, and Al Mannes):

Dear Allan,

Thank you for taking so much time to talk with us at www.HomeBuilderShowroom.com and to allow us to further our introductions.  I am scheduling our power point presentation with you for

Tuesday, Nov. 14, 2000 at 2:00 pm. I am enclosing our N.D.A. for you to fax back to us at 773-528-8848 and I will e-mail you our power point on Monday. I look forward to seeing you on your visit to Chicago later that week. Please allow us to "wine & dine" you or at least be good local hosts for a meal.

Please take a moment to go through our on-line Demo at www.HomeBuilderShowroom.com for a preview of some of our builder - A.S.P. model.

Likewise, you may want to go to www.BigLogs.com to see some of our e-commerce partner's demo capabilities. BigLogs.com is a demo of a fictional building supplier which shows some of the capabilities of the type of back-office solutions provided by www.HomeBuilderShowroom.com and www.CommerceQuest.com  The password and user names are the same, they are "BigLogs" (case sensitive).

I am going to ask Alan Preston of www.CommerceQuest.com to join us on the phone on the 14th at 2:00 pm. Alan has been a big help on the "tech" side in talking to our big builders. (Alan, these guys represent 10 of the largest builders in the U.S. who are teaming up to search and apply best solutions as a group, Thus, they represent our largest potential "customer" that I know of).

Thank you again. We look forward to talking with and meeting you soon.

159. On November 9, 2000, OLA and BHI entered into a mutual confidentiality agreement. In so doing, BHI bound itself, its "employees, directors, officers, shareholders, members, managers, partners, subsidiaries, affiliates, agents, consultants, attorneys, accountants and other professionals, advisors and representatives" to the terms of the agreement.

160. On November 29, 2000, OLA sent the following email to BHI (Al Mannes):

Dear Al,

Thank you for your follow-up memo (cough). I too am sick. Perhaps on-line distance conferencing is not as "safe" as we may think. I would like to reply to your thoughts by interlineating my own replies in your memo.

please look below for my REPLIES IN ALL CAPS WITH YOUR MEMO....THESE ARE MY QUICK REPLIES - I LIKE TO ANSWER ASAP.

I WILL BE IN SAN-FRAN FOR I-HOUSING. ARE YOU? CAN I HOOK UP WITH YOU OR YOUR TEAM THERE OR IN ATLANTA IN JANUARY OR CAN WE MEET SOME TIME TO KEEP OUR INFECTIOUS RELATIONSHIP GOING FORWARD.

BEST REGARDS AND FEEL BETTER. - BRUCE FOGELSON

Bruce,

Sorry I couldn't follow-up yesterday (sick...blah). We enjoyed the presentation on Monday and are impressed with how much you've achieved over the last year.

A little bit about where we are... We see three major dimensions to our product - - a marketplace (browsing, shopping),
(AL, THIS SOUNDS A BIT LIKE OUR "www.HOMEBUERSHOWROOM.COM WHICH IS DESIGNED TO PULL BUYERS IN BY DELIVERING QUALIFIED LEADS INCLUDING BUYERS WITH LISTS OF THE TYPE OF PRODUCTS AND FEATURES THEY MAY WANT)

- a sales experience (design-construction-delivery), (AKA OUR WWW.HOMEBUILDERSHOWROOM.COM) and

- an ownership experience. (AKA OUR WWW.HOMEHOMEPAGE.COM)

Our first launch due early spring will focus on the marketplace and ownership experience. This is based primarily on feedback from our builders, who want products that don't impact their business processes significantly.

In early summer we see launching a "toolbox" of ASP-like functions that builders can draw upon for the personalization & sales experience. Over the next few months we'll figure out what those "tools" should be and who should provide them (us or another vendor).

You are clearly on the short-list for the "personalization" toolbox with your design and option selection product.

THANK YOU.

I think the timeframe for us to choose a vendor will be March-April.

That also gives us time to see the results of your beta test. As with many of our ventures we are exploring, you have the technology, we have the relationships.

How do we enlarge the pie for all and then split it up win-win for everybody? I'd be interested in hearing your thoughts on that over the next months as we continue to talk.

I'M ALL FOR A STRATEGIC RELATIONSHIP THAT SHARES IN OUR SUCCESS. IN ADDITION, YOU SHOULD KNOW THAT IT IS A PART OF OUR BUSINESS PLAN TO OFFER WARRANTS TO OUR BUILDER CLIENTS SO THAT THEY TO CAN BENEFIT FROM ALL OF OUR EFFORTS IN MAKING THE BUILDING PROCESS BETTER.

In addition, our company will choose (finally) a technology platform by end of year, which impacts who we partner with as well.

I STRONGLY RECOMMEND THAT YOU TALK TO COMMERCE QUEST ABOUT THEIR ABILITY TO PROVIDE BOTH PLATFORM AND INTERFACE WITH LEGACY SYSTEMS AS WELL AS DATA TRAFFIC MANAGEMENT. ALAN PRESTON IS CC'ED ON THIS IF YOU WANT TO DROP HIM A LINE.

Bottom-line, lots of ambiguity on our end still. But as our marketing team refines our product requirements, I will have a much better idea how quickly to accelerate conversations with your company. Thanks again for the presentation and demo. I can return the zip drive if you wish -PLEASE MARK IT CONFIDENTIAL AND STICK IT IN A DRAWER IN CASE WE NEED TO GO THROUGH IT AGAIN. WE ARE NOW DOING MORE WEB-CONFERENCING AND I CAN NOW BETTER WALK YOU AND OTHERS THROUGH OUR PRESENTATION ON LINE NEXT TIME.- let me know how you want me to handle that. We'll talk again.

161. On March 7, 2001, BHI (Alpana Arora, CRM Manager) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo. BHI's representative gave her company as "Self" and her email as alpana.arora@excite.com.

162. BHI (Leila Menzie) visited HomeBuilderShowroom.com, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

163. On April 11, 2001, BHI (Al Mannes) sent the following email to Robert Johnson, the president of OLA:

Bruce and I had a number of conversations before the new year about potentially working together. We were on the same timeframe in that (1) our company wasn't yet doing any significant planning and development for virtual design centers, and (2) your company was doing its initial pilot in Chicago in January. I hope that went well for you.

Currently we are engaging a number of our consortium members 22 and growing weekly) as well as some manufacturers (e.g. Whirlpool, et. al.) about developing an industry standard virtual design center that meets the requirements of the key constituencies: builders, manufacturers, and consumers. In parallel we are taking a look at the technology landscape to identify companies that can provide solutions for those requirements. We have a definite bias towards working with a technology provider who is far down the road in developing virtual design center functionality.

Months ago Bruce was kind enough to conduct a web demonstration for us of your product. I'm sure your product has undergone revisions since that time.

In addition, those who are running the product development now weren't at that demo. If you are still interested in being a part of our technology survey, we'd like to set up another demonstration in the next few weeks, as well as talk about each other's businesses.

Let me know what works for you. Feel free to contact me at the info below.

164.   On April 17, 2001, BHI (Alpana Arora, CRM Manager,) visited HomeBuilderShowroom.com, used her business name, agreed to be bound by the Notice & Agreement and reviewed OLA's Online Demo.

165.   At all times relevant here, Alpana Arora represented to OLA that her job with BHI was "Customer Relations Manager." She did not disclose to OLA that she was BHI's "Launch Director, Envision."

166.   On April 25, 2001, OLA sent BHI (M. Zollor, Alpana Arora, M. Morman, COO, and Al Mannes) an invitation to a PowerPoint presentation of its product. OLA's email contained the follow statement:

All information and screen shots are confidential and can not be reused or reprinted without the expressed consent of OLA, llc. The information contained on these pages is confidential and proprietary. You will not disclose or use this information without the expressed written permission of OLA, llc.

You are allowed to view our site demo in order to consider a business opportunity with us and that this opportunity is good and valuable consideration in acceptance with the terms of this confidentiality agreement. © 2000, Patent pending.

167. OLA's presentation to BHI occurred by WebEx on May 4, 2001, or sometime between April 27, 2001 and May 14, 2001. There were at least three components to OLA's presentation:

a. a PowerPoint presentation that OLA used for builders and showed how a builder, manufacturer and customer could benefit from OLA's HomeBuilderShowroom.com and BuilderOnlineAssistant.com;

b. a PowerPoint presentation of OLA introducing OLA's partner, CommerceQuest, and its capability to design and service OLA's HomeBuilderShowroom.com and BuilderOnlineAssistant.com with CommerceQuest's proprietary systems;

c. an interactive demonstration of HomeBuilderShowroom.com and BuilderOnlineAssistant.com;

d. a general and specific discussion of OLA's business plans, designs and business opportunities.

168. The presentation in ¶ 167 contained OLA's confidential, proprietary or non-public business information and/or trade secrets that were subject to OLA's pending patent application and all of which stated such.

169. All of the presentations in ¶ 167 stated clearly that the information displayed was confidential and subject to OLA's pending patent application.

170.   On May 14, 2001, OLA sent BHI (Alpana Arora) the following letter:

We hope our presentation provided you with additional insight as to the depth and flexibility of Home Builder Showroom.  Our system has been developed to accommodate the smallest to the largest builders as well as companies with unique needs.

We have designed our program to be fully integrated with ANY builder system AND those of there key commerce partners.  This is the direct result of our out-sourced work with Commerce Quest.  We would be very glad to expand upon this and similar work which Commerce Quest has done for other industries, fortune 100 companies and the US Government.

Having worked with homebuilder for over 30 years, I well aware of the builders needs and their cautious approach to change. Our extensive market research has convinced us that most builders will have an on-line showroom as well as a user friendly web site for prospective home buyers. Further, all major builders are focused to provide some form of an interactive on line showroom even sooner.  Likewise, each of the major on-line MLS companies and major ASPs in the industry are planning for showrooms on their upcoming phases and talking with us just as you are now about our focus strategy.

In keeping with our "open-platform" philosophy, we want to make you aware that we are agreed in principal to integrate systems with firms such as Infinite Crossing in order to provide the best of service to our customers.

If you need additional information or have any questions please call me at any time.

171.   On May 16, 2001, BHI (Alpana Arora) sent the following email to OLA:

Builder Homesite requests your input for the Virtual Design Center and Builder CRM solutions.  Please complete the attached documents and return to me by no later than end of day Tues, May 22nd.  Feel free to contact me with any questions and concerns.

172.   On May 16, 2001, OLA sent the following email to BHI (Alpana Arora):

Thank you for your request and for our recent talks.  We look forward to responding.  At first glance, this seems like quite a lot of information to colate into your form in less a week.  I am wondering why the short deadline for well over 200 highly complex and technical questions?  I am certian that you will get a more realistic evaluation if we can take a few days to be sure that all of our team can respond.  Please note that our

team includes people currently in Chicago, Tampa, Ft. Laterdale, New Youk, and elswhere

I am also concerned as to what you plan to do with this information.

Although we covet your business, I'm sure we are just as sensative about the confidential and propriatory nature of our business and technology as you are about your business. Please take a moment to let us know under what terms we are providing you with both public and sensative information.

173.   On May 17, 2001, BHI (Alpana Arora) sent the following email to OLA:

I understand your concerns.  Please provide us with as much information as you feel comfortable.  Consider this an extension of our sales oriented sessions we have had.  We have covered most of the questions w/in the RFI in our 2 web sessions.  With over 20 players in this whole builder CRM/VDC space, I am sure you can understand why I would like to ensure I haven't missed anything in my evaluations.  If next Tuesday is not feasible, let me now what is acceptable to your team.

174.   On June 1, 2001, OLA sent the following email to BHI (Alpana Arora):

Home Builder Showroom is pleased to reply to your recent Request for Information.  Please note that included (and to be mailed) are answers to the general questioner as well as some more detailed project development information on phasing and deployment in order to meet your needs from what we perceive based on your questions.

Please note that, in responding to your firms very well thought out questions, we believe that we can quickly and economically focus our system to match any particular needs.  We have the skills, insights and the team ready to meet this terrific market opportunity to work with Builder Homesite.

In responding to your many pointed questions, I must point out that we feel we have left un-asked and un-answered many unique features which seem to go beyond this round of questions.  Please know that we feel that the B-2-C focus on our development work to date would be a significant benefit and broaden the consumer experience in ways we have invented or pioneered.  On the other hand the B-2-B issues which seem to be prevalent in your R.F.I. are important and easy for us to adapt.  We have tried to rank those as to ease and speed or application.  We would be glad to craft a specific proposal to merge your needs and enhance them with our other work to date.

In working with Builder Homesite I will remind you of our Notice & Agreement filled out upon your visits to our web-site. By filling out this form and proceeding to view our demo and this more detailed information, you understand and agree to be bound by this agreement that the information contained is confidential and proprietary. You will not disclose or use this information without the expressed written permission of OLA, llc. We would be glad to provide you with further information as we go forward and hope that this is enough to keep us in your consideration.

We choose not to answer some questions which we consider probative at this point but will be glad to respond with more detail as we go forward. You are allowed to view our site demo and that this opportunity is good and valuable consideration in acceptance with the terms of this confidentiality agreement.

By submitting this form you had indicate your acceptance. By accepting this e-mail you re-confirm the proprietary nature of our work and these terms and ©, Patent pending, etc.

Thank you again for the opportunity to work with you. We look forward to our next exchange of ideas. We hope to be of service!

175. OLA's June 1, 2001 email included four files of information, Preview Partner Agreement Feb 2001.doc, BHS-RFI -- BCRM Matrix - vendors - .xls, HBS reply to R for Info.doc and BHS-RFI -- Reply VDC Feature Matrix - vendors .xls.

176. That same day, OLA mailed the same four files listed in ¶ 175 to BHI (Alpana Arora). The email attachments and the mail package contained none of OLA's confidential, proprietary or non-public business information and/or trade secrets.

177. The "Preview Partnership Agreement Feb. 2001.doc" made clear OLA's intention that any information developed by OLA would be confidential, as it stated:

CONFIDENTIAL: All information and forms (except those approved for posting on-line) are to be kept strictly confidential. No information on [HomeBuilderShowroom.com] or Customer Information nor any customer, user or visitor to your site will be made available to anyone except HBS and Customer.

178.  On June 5, 2001, BHI (Alpana Arora) sent the following email to OLA:

Thanks for your email.  However, some of the legal verbage in your email below is a bit disconcerting.  To that effect, I would like to decline this email and will not open any of the documents/information contained or attached.  Thank you for your efforts.

179.  On June 6, 2001, OLA sent the following email to BHI (Alpana Arora):

To say that I am surprised and somewhat offended by your refusal to even open our reply to your RFI for the reason you stated is to understate the matter or it's importance.

I believe that we were first introduced to you by a Wall Street Investment firm in mid-2000.  I recall talking with your top management (including Tim Costello).  I have met and talked at length with key members of your firm, Particularly Al Mannes.

On 11/9/2000 Al Mannes executed a Mutual Nondisclosure Agreement ! (which I'm glad to fax you).

Our web-site and demo which you saw and all of our e-mails up to and including this RFI included the exact same language which you have in the past both understood and affirmed.  (See samples below).

In all those conversations and e-mails I believe that we have made it clear that we value our work and that it is subject to Copyright and Patents Pending and that we were talking to you for the potential of doing business.

(Below are a few of the many such back & forth e-mails)

Based on this and for your RFI of over 200 technical and probing questions we have spent $ thousands of dollars with our e-commerce team and not a few hours.

For all this we simply want to advise you of this and be assured that you are not on a "fishing expedition" or to steal our ideas for your self or your clients.  Seeing as we know and have met with many of your clients and both you and they have agreed to these similar terms and we are all builders and probably members of the National Association Of Home Builders and and subject to their Code of Ethics.

I do not think that it was inappropriate to re-state the case in the context of advising you that we would provide EVEN MORE if we had some hint of what you were doing with all this.

I am forwarding this to others at your firm. I would appreciate a phone call to get something more than the brush-off I just got. My number is 800-970-2227.

I suggest you open the package we sent, if even to get the copy of the very funny Dave Barry's "Homes and Other Black Holes" which addresses the lighter side of our business which was my gift to you for your assistance. I want to keep this as light as I can so as not to harm the potential of our valuable relationship. I do, however take our product development just as seriously as I hope you do and I would not be as firm in this reply if I did not know that value of our work to you - Even if I need to address this matter directly.

180. On June 11, 2001, BHI (Alpana Arora) sent the following email to OLA:

Thank you for the conversation last week --it was great to just dialogue about the business issues and gain a common understanding. The following is what should get us in sync from a legal perspective.

BHI desires to review any materials you have provided, pending your agreement of the following:

* No information provided is confidential under the terms of any NDA

* You understand that we will be disclosing this information to homebuilders, without any restrictions of confidentiality

* BHI has no control over how the builders will be using this information, once it leaves our hands

If this is agreeable to you, please respond to this email and reattach the files for our review (as we have deleted all previous correspondence pending the outcome of our discussions). Bruce--we hope this makes you comfortable as well and will allow us to move forward. But certainly, if it does not, we will respect your decision not to participate.

181. On June 11, 2001, OLA sent the following email to BHI (Alpana Arora):

Thank you for your note. We would very much like to participate and move forward in this way. Not meaning to "over lawyer" anything (especially since I'm no lawyer), I just wanted to be additionally clear from our talks that you know that BHS is permitted and encouraged by us, to use the information in our response to your R.F.I. that you should have in a mailed package. We hope you present our response to your Request For Information for you and your builder-members and treat us the same

as all your other respondents. I hope that you will keep us posted and we look forward to any feed-back you may have.

182. After June 11, 2001, OLA never heard back from BHI.

183. After August 8, 2001, no builders or manufacturers in either the BHI or the NHT consortium again visited HomeBuilderShowroom.com and viewed the Online Demo, or at least none entered their actual name. It does appear, however, that Alpana Arora did view the Online Demo after August 8, 2001.

184. After August 8, 2001, there were a number of persons who visited HomeBuilderShowroom.com and viewed the Online Demo after providing false or nonsensical information on the required form. Upon informed belief, OLA alleges that one or more of these persons was a member of *BHT/NHT Joint Enterprise* and/or their agents.

**BHI/NHT Joint Enterprise is Created:**

185. As early as May 2000, *BHI/NHT Joint Enterprise* gathered to discuss OLA's confidential, proprietary or non-public business information and/or trade secrets. At or about that time, or thereafter, *BHI/NHT Joint Enterprise* began to create NHT and *Envision* by using OLA's confidential, proprietary or non-public business information and/or trade secrets.

186. On May 17, 2000, BHI registered the internet domain name of newhometechnology.com. BHI is also the administrative contact and technical contact for newhometechnology.com.

187. On January 8, 2001, BHI registered the internet domain name of newhometech.com. BHI is also the administrative contact and technical contact for newhometech.com.

188. On January 22, 2001, BHI registered the internet domain name of newhometechnologies.com. BHI is also the administrative contact and technical contact for newhometechnologies.com.

189. Without OLA's confidential, proprietary or non-public business information and/or trade secrets, *BHI/NHT Joint Enterprise* would not have been able to create their business enterprise, NHT, or *Envision* until after July 25, 2002.

**NHT's Formation:**

190. On July 3, 2003, BHI formed NHT as a Texas limited liability corporation.

191. NHT is located in Austin, Texas.

192. NHT claims to be a subsidiary or affiliate of BHI. In reality, they function as the same entity.

193. Both BHI and NHT have offices at 11900 Ranch Road 620 N., Austin, Texas 78750-1345.

194. BHI and NHT operate and share the same web site. Indeed, a demonstration of *Envision* is accessible through builderhomesite.com and the demonstration lists its source as builderhomesite.com.

195. BHI and *BHI Consortium Owners* invited the members of *NHT Consortium Owners* to participate in NHT and the creation of *Envision*.

196. NHT is comprised of *BHI Consortium Owners* and *NHT Consortium Owners*.

197. BHI and the members of *BHI Consortium Owners* and *NHT Consortium Owners* were instrumental in the creation of NHT from its inception.

198. BHI owns one-half of NHT.

199. *NHT Consortium Owners* own the other one-half of NHT.

200. NHT claims that it was founded to bring homebuilding industry leaders together to develop world-class technology solutions.

201. On July 2, 2004, NHT filed an application with the USPTO to register the names "NHT Envision" and "Envision."

202. On January 15, 2004, BHI publicly announced the formation of a new consortium of homebuilders and suppliers, NHT, and stated that the new company was dedicated to improving design options management for the entire homebuilding industry. BHI claimed that by creating a single, "industry-owned" solution, NHT would deliver the most comprehensive options marketing for consumers resulting in more upgrade sales for both builders and suppliers.

203. The current members of NHT's board of directors are Mike Chandler (Vice President, Fixtures Marketing, Kohler), Brad Determan (President, Hearth & Home), Tom Halford (General Manager, Field Sales, Whirlpool), Ralph Harris (Vice President, Sales, Southern Region, Square D), Craig Jones (Vice President Information Services, Home Services Team, Weekley), Lisa Kalmbach (Senior Vice President of Design Centers, KB Home), Robert J. Kelle (Vice President, Chief Information Officer, Standard Pacific), Kurt Liebich (Vice President, Business Development, Weyerhaeuser), Kira McCarron (Chief Marketing Officer, Sr. Vice President, Toll), Karen Mendelsohn (Vice President, Sales & Marketing, Masco), John R. Nygard, III (Chief Information Officer, Lennar Corp.), Dan Piche (Director of Sales, North American Building Materials, Owens), Sean Ryan (Chief Information Officer, Capital Pacific Homes), Jay Schrankler (Vice President, Automation & Control Solutions, Marketing Department, Honeywell),

Cindy Tierney (Chief Information Officer, Beazer), Chuck Thompson (Vice President, Sales, York) and Tim Costello (Chairman of the Board, President, CEO, BHI).

***BHI/NHT Joint Enterprise Gathered to Create Envision:***

204.  Between March 2004 and March 2005, *BHI/NHT Joint Enterprise* hired Brett M. Burkhart and others to implement *Envision*.

205.  On January 15, 2004, Ian McCarthy, CEO of Beazer, stated "The consortium is what makes [*Envision*] possible" and "[o]nly by working together to design a product based on the business needs of both builders and suppliers can we create a tool that really works for everyone."

206.  Mr. McCarthy's statement was false. *Envision* was "conceived" and "created" from OLA's confidential, proprietary or non-public business information and/or trade secrets that *BHI/NHT Joint Enterprise* wrongfully obtained from OLA prior to July 25, 2002.

207.  At the time *BHI/NHT Joint Enterprise* gathered prior to July 25, 2002, it had obtained OLA's confidential, proprietary or non-public business information and/or trade secrets. *Defendants Bound to Confidentiality* agreed to OLA's Notice & Agreement, and other agreements, prior to receiving OLA's confidential, proprietary or non-public business information and/or trade secrets.

208.  Additionally, BHI wrongfully used or distributed OLA's confidential, proprietary or non-public business information and/or trade secrets that OLA did not include in its response to BHI's requests for proposal (*see* ¶ 181).

**BHI/NHT Joint Enterprise Launched Envision:**

209. On September 29, 2004, NHT announced the successful summit of new homebuilders and product manufacturers intending to launch the *Envision* options product management web based product suite. According to the announcement, *Envision* was designed to "greatly improve the way the new home industry markets products to homebuyers." Over 300 leaders of the homebuilding industry attended a two-day summit and worked together to prepare to launch *Envision*, which NHT described as "a web based options management solution that has the power to overcome traditional barriers to effective options marketing, including complex data management and integration issues, and the limitations of selling options in physical design centers."

> According to Jonathan Smoke, CIO, Beazer Homes USA: "It feels like 1999 - people in our industry are excited about the Internet again. There's a real sense that we're on the verge of something big - that Envision is the true killer app we've been waiting for."

> "Through Envision, both builders and manufacturers have found a way to breakthrough the barriers and integrate the options process," said Melissa Morman, COO, New Home Technologies.

210. On December 14, 2004, NHT and Edgenet, Inc. announce a partnership whereby Edgenet would provide NHT with manufacturer catalog data compatible with *Envision*.

211. On February 15, 2005, BHI announced the launch of *Envision*, which it referred to as the industry-owned options management solution. BHI claimed *Envision* was a "fully integrated options management platform designed to help the homebuilding industry manage the often complex process of marketing options for new homes." BHI

also claimed that *Envision* was "[c]reated for the entire building industry" and "includes specific tools for manufacturers, builders, and homebuyers."

212.　In the Spring of 2005 (sometime after March 20, 2005), Beazer, Capital Pacific, Weekley, KB Home, Lennar, McGuyer Homebuilders, Morrison Homes, Standard Pacific, Toll, and Village Homes began to use *Envision* to sell options to their homebuyers.

213.　The key manufacturers participating in the Spring of 2005 roll out of *Envision* were Georgia-Pacific, Hearth & Home, Honeywell, Kohler, Masco, Overhead Door, Owens, Progress, Square D, Therma-Tru, Weyerhaeuser, Whirlpool and York.

214.　BHI participated in the Spring roll out of *Envision*.

215.　In addition to the manufacturers identified in ¶ 213, there were hundreds of "Envision-enabled" manufacturer participants coming on board to support the launch of *Envision* in the Spring of 2005.

216.　Some of the *Envision* enabled manufacturers that are or have used *Envision* include, by way of example only, Bass Cabinets and Related Products Inc. (Slide-Lok), Bose Corporation, Carrier Corporation, Craftmade International, Inc., Dimplex North America Limited, E.I. du Pont de Nemours and Company, Emerson Electric Company, General Electric Company, Moen Inc., On-Q/Legrand, Range Cylinders Limited, Royal Appliance Manufacturing Company, Shaw Industries Group, Inc., Sony Corporation of America, Sub-Zero Freezer Company, Inc., The New Home Collection, Trane Inc. and Viking Range Corporation.

217.　In May of 2005, Weekley became the first builder to use *Envision*.

218.    In May of 2005, Standard Pacific and Gulf Bay Group of Companies joined BHI's consortium.

219.    In August of 2005, Beazer and KB Home began to use *Envision*.

220.    In September of 2005, Kimball Hill, Inc. d/b/a Kimball Hill Homes and Lennar began to use *Envision*.

221.    Between September of 2005 and January 19, 2006, DeLuca Homes, Trendmaker Homes and Generation Homes joined BHI's consortium.  DeLuca Homes and Generation Homes each began to use *Envision* at about that same time.

222.    In February of 2006, Allen Edwin Company d/b/a Allen Edwin Homes began to use *Envision*.

223.    In February of 2006, Standard Pacific began to use *Envision*.

224.    On June 27, 2006, BHI and NHT announced that Constellation HomeBuilder Systems, Inc. and NHT had entered into a reseller agreement whereby Constellation agreed to market and distribute the *Envision* options management system to Constellation's homebuilder customers and provide integration and support services for the companies' mutual customers.  Constellation is a leading software provider to homebuilders with several brands of products such as accounting and scheduling and process management.  These products are marketed under the names Constellation HomeBuilder Systems including Constellation FAST, NewStar, Builder 360, BuildSoft, Constellations CRM and Builder Pro.

225.    In September of 2006, Trendmaker Homes, Inc. began to use *Envision*.

226.    In October of 2006, Capital Pacific began to use *Envision*.

227.    In January of 2007, Toll began to use *Envision*.

228.     In March of 2007, Centex began to use *Envision*.

229.     In November of 2006, Fulton Homes Corporation began to use *Envision*.

230.     In December of 2006, McGuyer Homebuilders, Inc. began to use *Envision*.

231.     In April of 2007, The Ryland Group, Inc. began to use *Envision*.

232.     In June of 2007, M/I Homes, Inc. began to use *Envision*.

233.     In August of 2007, WCI Communities, Inc. and Gold Medallion Custom Homes, L.C. d/b/a Gold Medallion Homes began to use *Envision*.

234.     In November of 2007, Ennis Homes, Inc. began to use *Envision*.

**Envision's Successes:**

235.     On July 30, 2007, BHI and NHT announced, "thanks to Envision's reasonable price point, builders are experiencing a 20-50x return on their investment." *Envision* costs the builders $100 per house, implying or meaning that builders were earning between $2000 and $5000 in additional profits per house.

236.     On July 30, 2007, BHI and NHT also stated, "Builders have realized 10-15% increases in options upgrade sales by implementing Envision."

237.     On October 8, 2007, BHI and NHT stated, "[s]ince going live 2.5 years ago, Envision has matured into a stable enterprise application, and now over 20K buyers have become 'Envision Enabled'! . . .. However, as builders have become more sophisticated in using Envision features such as packaging, we are now starting to see **sales increases in the 30% and up range!** . . .. With just the sale of one or two additional electrical plugs, the Envision product is paid for!" (Emphasis in original).

238. Thus, by October of 2007, some builders using *Envision* were earning $10,000 and more in increased profits per house.

239. In October/November of 2007, Fulton Homes (Dennis Webb, vice president of operations) reported that while using *Envision*, it has seen "a 61 percent increase in options revenue that have 'blown away' expectations."

240. On November 19, 2007, KB Home (Lisa Kalmbach, Senior Vice President of Design Studios) stated, "We really needed someone to bring in the homebuilders, the content, the manufacturers, and create this wonderful online program (Envision)."

241. On November 19, 2007, KB Home (Lisa Kalmbach, Senior Vice President of Design Studios) claimed that KB Home was seeing a 10-20% increase in options sales.

242. On January 22, 2008, BHI/NHT (Melissa Morman, COO) reported that the builders that have launched *Envision* were realizing a 15-30% increase in options upgrade sales for their $100 per house investment.

243. On January 22, 2008, BHI/NHT (Melissa Morman, COO) reported that one of the top five builders achieved perfect JD Power scores for customer satisfaction by offering *Envision*.

**BHI/NHT Pricing Structure for Envision:**

244. BHI, NHT and *BHI/NHT Joint Enterprise* priced *Envision* so that builders and manufacturers pay approximately the same for each house entered into *Envision*. Builders pay $100 per home. The manufacturers whose product lines are offered by a builder to a homebuilder also pay approximately $100 per home. The charge to the

manufacturers is determined by the products typically found in a 2400 square foot home.

245.    Under its contracts with manufacturers, NHT and *BHI/NHT Joint Enterprise* collect a fee from each manufacturer for putting its product data into *Envision* and for each instance where the manufacturer's product line is offered by any builder (or its agents) to a homebuyer for placement in their new home.

246.    Under its contracts with builders, NHT and *BHI/NHT Joint Enterprise* collect a fee from each homebuilder to set up the homebuilder to use *Envision* and to orient the homebuilder's employees.  Under this same contract, NHT and *BHI/NHT Joint Enterprise* also collect a fee from each homebuilder for each home entered into *Envision*.    Once selected by a builder, a manufacturer's products are offered to the builder's homebuyer for inclusion in the homebuyer's new home.

247.    NHT and *BHI/NHT Joint Enterprise* collect a fee or commission from builders, manufacturers and third parties in exchange for providing data, products or services that are based upon the selections made by customers to such builders, manufacturers and third parties.

**JOINT LIABILITY**

248.    *BHI/NHT Joint Enterprise* operated BHI, NHT and *BHI/NHT Joint Enterprise* such that they are jointly liable to OLA for their *Wrongful Acts*.

249.    *BHI/NHT Joint Enterprise* members are also homebuilders or manufacturers that are *Envision* customers.    Each individual homebuilder and manufacturer in *BHI/NHT Joint Enterprise* is jointly liable for its individual actions in furtherance of the *Wrongful Acts*.

***BHI's Corporate Veil Should Be Pierced***:

250.  *BHI Consortium Owners* have created, organized and operated BHI as a mere tool or business conduit of each of *BHI Consortium Owners* to commit *Wrongful Acts*.  There is such unity between BHI and each of the *BHI Consortium Owners* that the separateness of BHI has ceased and holding only BHI (and not each of the *BHI Consortium Owners*) liable would result in injustice.

251.  *BHI Consortium Owners* have the sole financial interest, ownership and control over BHI.  *BHI Consortium Owners* own all of the stock in BHI.  BHI's sole purpose has been to serve *BHI Consortium Owners* for their individual interests, profit, benefits and advantage.  BHI is a mere sham and shell that operates as the *alter ego* of each of *BHI Consortium Owners*.  *BHI Consortium Owners* have exercised total domination and control over BHI.  The officers of *BHI Consortium Owners* are and always have been the only directors of BHI.

252.  BHI's website, builderhomesite.com, is but an advertisement of *BHI Consortium Owners* members.  It uses *BHI Consortium Owners* names, logos and provides links to their individual websites.  BHI proclaims that it is a consortium of thirty-six of the nation's largest homebuilders, including *BHI Consortium Owners*.  In these, and many other ways, *BHI Consortium Owners* have made BHI indistinguishable from their own business, proving that BHI is the *alter ego* of *BHI Consortium Owners*.

253.  *BHI Consortium Owners* knew that *Defendants Bound to Confidentiality* were obligated to keep OLA's confidential, proprietary and/or non-public business information and/or trade secrets confidential.  They knew that without the expressed written permission of OLA, *Defendants Bound to Confidentiality* could not disclose or

use OLA's confidential, proprietary or non-public business information and/or trade secrets.

254.    *BHI Consortium Owners* knew from the start that *Builder's On-Line Assistant* was subject to pending patent applications and later knew of the '455 and '553 patents.

255.    *BHI Consortium Owners* created, organized and operated BHI to evade their legal obligations for their *Wrongful Acts*.

**NHT's Corporate Veil Should Be Pierced:**

256.    *BHI/NHT Joint Enterprise* has created, organized and operated NHT as a mere tool or business conduit of *BHI/NHT Joint Enterprise* members to commit *Wrongful Acts*. There is such unity between NHT and each member of *BHI/NHT Joint Enterprise* that the separateness of NHT has ceased and holding only NHT (and not each *BHI/NHT Joint Enterprise* member) liable would result in injustice.

257.    *BHI/NHT Joint Enterprise* has the sole financial interest, ownership and control over NHT. *BHI/NHT Joint Enterprise* owns all of the membership interests in NHT. NHT's sole purpose has been to serve *BHI/NHT Joint Enterprise* members for their individual interests, profit, benefit and advantage. NHT is a mere sham and shell that operates as the alter ego of the *BHI/NHT Joint Enterprise* members. *BHI/NHT Joint Enterprise* members have exercised total domination and control over NHT. Officers of *NHT Consortium Members* and officers of the *BHI Consortium Members* are and always have been the only members of NHT's board of directors. The officers of BHI and NHT are the same and each are listed as an officer of "BHI/NHT" on builderhomesite.com and newhometechnologies.com.

258. *BHI/NHT Joint Enterprise*'s websites, envsionoptions.com, builderhomesite.com, newhometechnology.com and newhometechnologies.com, are practically an advertisement of *BHI/NHT Joint Enterprise* members. The websites use *BHI/NHT Joint Enterprise* members' names, logos and provide links to their individual websites. NHT proclaims that it is a consortium of *BHI/NHT Joint Enterprise* members. The sole product of NHT, *Envision*, is marketed on a website jointly owned, operated and managed by *BHI/NHT Joint Enterprise*. *BHI/NHT Joint Enterprise* has employed Melissa Morman, BHI/NHT's vice president and chief operating office, to manage "the consortiums themselves." In these, and many other ways, *BHI/NHT Joint Enterprise* has made NHT indistinguishable from their own business, proving that NHT is the alter ego of *BHI/NHT Joint Enterprise*.

259. *BHI/NHT Joint Enterprise* knew *Defendants Bound to Confidentiality* were obligated to keep OLA's confidential, proprietary or non-public business information and/or trade secrets confidential. They knew that without the expressed written permission of OLA, *Defendants Bound to Confidentiality* could not disclose or use OLA's confidential, proprietary or non-public business information and/or trade secrets.

260. *BHI/NHT Joint Enterprise* knew from the start that *Builder's On-Line Assistant* was subject to pending patent applications and later knew of the '455 and '553 patents.

261. *BHI/NHT Joint Enterprise* created, organized and operated NHT to evade their legal obligations for their *Wrongful Acts*.

**Single Business Enterprise – NHT and BHI/NHT Joint Enterprise:**

262.    NHT provides *BHI/NHT Joint Enterprise* an especially valuable service that greatly increases the individual profits of *BHI Consortium Owners* and *NHT Consortium Owners* members.   Yet, *BHI/NHT Joint Enterprise* has created, organized and operated NHT in a fashion to deprive NHT any meaningful profit.   Instead, the fair profit due to NHT for *Envision* goes directly to the members of *BHI/NHT Joint Enterprise*.

263.    *BHI/NHT Joint Enterprise* does not operate NHT as a separate business. Rather, *BHI/NHT Joint Enterprise* members have fully integrated NHT's resources with their own to form NHT and operate *Envision*, and, by doing so, commit their *Wrongful Acts*.  *BHI/NHT Joint Enterprise* is liable for the debts NHT has incurred to OLA through its *Wrongful Acts*.

**Assisting and Participating:**

264.    *BHI/NHT Joint Enterprise* and each of its members has committed *Wrongful Acts*.

265.    Each *BHI/NHT Joint Enterprise* member has provided substantial assistance to every other *BHI/NHT Joint Enterprise* member to accomplish *Wrongful Acts*.

266.    Each *BHI/NHT Joint Enterprise* member's conduct was a substantial factor in committing the violations of OLA's rights as stated in this Complaint, including but not limited to, *Wrongful Acts*.

***Joint Enterprise:***

267.    *BHI/NHT Joint Enterprise* members have an express or implied agreement among themselves to carry out the violations of OLA's rights as stated in this Complaint, including but not limited to, *Wrongful Acts*.

268.    The common purpose of *BHI/NHT Joint Enterprise* was to carry out the violations of OLA's rights as stated in this Complaint, including but not limited to, *Wrongful Acts*.    Each *BHI/NHT Joint Enterprise* member shares a community of pecuniary interest with all other *BHI/NHT Joint Enterprise* in that all profited from NHT's operation of *Envision*.

269.    Each *BHI/NHT Joint Enterprise* member has an equal right to direct and control *BHI/NHT Joint Enterprise* and NHT.

***Conspiracy:***

270.    *BHI/NHT Joint Enterprise* formed a consortium, *i.e.*, a partnership, an association, or a joint enterprise that is necessarily a combination of more than two individuals.

271.    *BHI/NHT Joint Enterprise* exists to accomplish *Wrongful Acts*.

272.    *BHI/NHT Joint Enterprise* carried out *Wrongful Acts* by unlawful means.

273.    *BHI/NHT Joint Enterprise* had a meeting of the minds on the object or course of action, specifically to carry out *Wrongful Acts*.

274.    *BHI/NHT Joint Enterprise* and each of its members, or certainly one of them, committed one or more overt acts to achieve or further the unlawful objects or purposes of *Wrongful Acts*.

275. OLA suffered injury because of *BHI/NHT Joint Enterprise* and its members' conduct described in ¶¶ 271, 272, 273 and 274.

## COUNT I: PATENT INFRINGEMENT

276. On July 11, 2006, the USPTO issued United States Patent No. 7,076,455 to Fogelson for an invention titled "Builder's On-Line Assistant." Fogelson assigned all his rights under the '455 patent to OLA.

277. On August 7, 2007, the USPTO issued United States Patent No. 7,254,553 to Fogelson for an invention titled "Builder's On-Line Assistant." Fogelson assigned all his rights under the '553 patent to OLA.

278. Pursuant to 35 U.S.C. § 282, the '445 and '553 patents are presumed valid.

279. NHT has infringed and continues to infringe claims 1, 19, 30 and/or other claims of the '455 patent and claims 1, 19, 26 and/or other claims of the '553 patent by making, using, selling and/or offering to sell *Envision*, as well as any other system that employs the invention claimed in the '455 and '553 patents.

280. NHT and *BHI/NHT Joint Enterprise* have infringed and continue to infringe claims 1, 19, 30 and/or other claims of the '455 patent, and claims 1, 19, 26 and/or other claims of the '553 patent by making, using, selling, and/or offering to sell *Envision*, as well as any other system that employs the inventions claimed in the '455 and '553 patents.

281. OLA has been damaged by the infringement and is entitled to recover no less than a reasonable royalty for such infringement.

282.   *BHI/NHT Joint Enterprise* controls the right of access of all users of *Envision* such that *BHI/NHT Joint Enterprise* is vicariously liable for all users' infringement.

283.   Alternatively, *BHI Consortium Owners* and *NHT Consortium Owners* are jointly liable for infringement of claims 1, 19, 30 and/or other claims of the '455 patent and claims 1, 19, 26 and/or other claims of the '553 patent.

284.   The infringement of the '455 patent and of the '553 patent by *BHI/NHT Joint Enterprise* and NHT is and has been willful.

285.   As a direct and proximate consequence of the infringing acts and practices of *BHI/NHT Joint Enterprise* and NHT, OLA has suffered, is suffering, and unless such acts and practices are enjoined by this Court, will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284.

286.   By reason of their acts and practices, *BHI/NHT Joint Enterprise* and NHT have also caused, are causing, and unless such acts and practices are enjoined by this Court, will continue to cause immediate and irreparable harm to OLA for which there is no adequate remedy at law, and for which OLA is entitled to injunctive relief under 35 U.S.C. § 283.

287.   OLA has complied with the statutory requirement of placing a notice of the '455 patent and of the '553 patent on its websites, HomeBuilderShowroom.com, OLAllc.com, BuilderOnlineAssistant.com and on its cards, letters, press releases and advertisements, as well as its numerous emails and presentations to various *BHI/NHT Joint Enterprise* members.

## COUNT II: ILLINOIS TRADE SECRETS ACT

288. OLA asserts claims under the Illinois Trade Secrets Act for *BHI/NHT Joint Enterprise*'s and each of its member's violations of the Notice & Agreement on OLA's HomeBuilderShowroom.com as well as other confidentiality agreements.

289. *Defendants Bound to Confidentiality* each entered into enforceable confidentiality agreements with OLA protecting its confidential, proprietary or non-public business information and/or trade secrets that were confidential and subject to the Notice & Agreement before July 25, 2002.

290. *Defendants Bound to Confidentiality* each accepted the Notice & Agreement on OLA's HomeBuilderShowroom.com before July 25, 2002. BHI also agreed it would not use any of OLA's confidential, proprietary or non-public business information and/or trade secrets that were confidential and subject to the Notice & Agreement other than the non-confidential information OLA disclosed in its response to BHI's request for information.

291. By agreeing to the Notice & Agreement and OLA's terms for review of its response to BHI's request for information, BHI further bound *BHI/NHT Joint Enterprise* not to use any of OLA's confidential, proprietary or non-public business information and/or trade secrets.

292. *Defendants Bound to Confidentiality* agreed in the Notice & Agreement that viewing the Online Demo was "good and valuable consideration in acceptance with the terms of this confidentiality agreement."

293. Specifically, from June 14, 2000 (when Pulte, a founder and an owner of BHI agreed to the Notice & Agreement) until July 25, 2002 (when the USPTO published

the application that would become OLA's '553 patent), *BHI/NHT Joint Enterprise* knew that OLA's confidential, proprietary or non-public business information and/or trade secrets were confidential and subject to the Notice & Agreement or other agreements that bound each of the *Defendants Bound to Confidentiality*.

294.  OLA performed all of its obligations under the Notice & Agreement by, among other things, making its confidential, proprietary or non-public business information and/or trade secrets including but not limited to, its trade dress, business plans, designs, demos, technical or non-technical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings and processes available to *Defendants Bound to Confidentiality*.

295.  OLA's confidential, proprietary or non-public business information and/or trade secrets were, before July 25, 2002, sufficiently secret to derive economic value, actual or potential, because other persons who could obtain economic value from its disclosure or use did not generally know of them.

296.  At all times prior to July 25, 2002, OLA took reasonable efforts under the circumstances to protect its confidential, proprietary or non-public business information and/or trade secrets.

297.  *Defendants Bound to Confidentiality* misappropriated OLA's confidential, proprietary or non-public business information and/or trade secrets.  Specifically, they intentionally and knowingly acquired OLA's confidential, proprietary or non-public business information and/or trade secrets by improper means.

298.  *Defendants Bound to Confidentiality* used various improper means to acquire OLA's confidential, proprietary or non-public business information and/or trade

secrets. Among these, they misrepresented their identities, purpose and/or intent when requesting or accessing OLA's confidential, proprietary or non-public business information and/or trade secrets. They also breached and/or induced others to breach the Notice & Agreement. At all times, they intended to use OLA's confidential, proprietary or non-public business information and/or trade secrets for their own use contrary to the Notice & Agreement.

299. *BHI/NHT Joint Enterprise* and each of its members knew that *Defendants Bound to Confidentiality* had improperly acquired OLA's confidential, proprietary or non-public business information and/or trade secrets. *BHI/NHT Joint Enterprise* members induced *Defendants Bound to Confidentiality* to breach the Notice & Agreement.

300. *Defendants Bound to Confidentiality* improperly disclosed OLA's confidential, proprietary or non-public business information and/or trade secrets to *BHI/NHT Joint Enterprise*. Except for BHI and Honeywell, *NHT Consortium Owners* that were not *Defendants Bound to Confidentiality* would not have had access to OLA's confidential, proprietary or non-public business information and/or trade secrets but for the improper disclosure by *Defendants Bound to Confidentiality*.

301. *Defendants Bound to Confidentiality*, as well as *BHI/NHT Joint Enterprise*, have intentionally violated the Notice & Agreement by disclosing and/or using OLA's confidential, proprietary or non-public business information and/or trade secrets without OLA's expressed written permission.

302. *Defendants Bound to Confidentiality*, as well as *BHI/NHT Joint Enterprise*, have intentionally violated the Notice & Agreement by disclosing and/or using OLA's

confidential, proprietary or non-public business information and/or trade secrets for a purpose other than considering a business opportunity with OLA.

303.    Between June 14, 2000 and July 25, 2002, *BHI/NHT Joint Enterprise* secretly participated in the creation of NHT and *Envision*. *BHI/NHT Joint Enterprise* formed NHT and *Envision* using OLA's confidential, proprietary or non-public business information and/or trade secrets, including but not limited to its business model. *BHI/NHT Joint Enterprise* modeled *Envision* as a nearly perfect replica of OLA's HomeBuilderShowroom.com. *BHI/NHT Joint Enterprise* could not have done all of this prior to July 25, 2002 without using and relying upon OLA's confidential, proprietary or non-public business information and/or trade secrets.

304.    *Defendants Bound to Confidentiality*, as well *BHI/NHT Joint Enterprise*, effectively and purposefully eliminated OLA's exclusive right to exploit its confidential, proprietary or non-public business information and/or trade secrets and the '455 and '553 patents.

305.    Specifically, *BHI/NHT Joint Enterprise* used the time between June 14, 2000 and July 25, 2002 to create or prepare to create NHT and *Envision*.

306.    *BHI/NHT Joint Enterprise* used the time between June 14, 2000 and July 25, 2002 to create, modify, adopt or manufacture products or services that would compete with or be used in lieu of OLA's products or services.

307.    *BHI/NHT Joint Enterprise* used the time between June 14, 2000 and July 25, 2002 to gather many of the major homebuilders and manufacturers into NHT to assure that OLA's exploitation of its confidential, proprietary or non-public business information and/or trade secrets and the '455 and '553 patents would not be viable.

308. OLA is entitled to recover damages for the misappropriation of its confidential, proprietary or non-public business information and/or trade secrets, including both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss caused by *Defendants Bound to Confidentiality* and *BHI/NHT Joint Enterprise*. If neither damages nor unjust enrichment caused by the misappropriation can be proved by a preponderance of the evidence, OLA is entitled to an award of damages caused by the misappropriation measured in terms of a reasonable royalty for these defendants' unauthorized disclosure or use of OLA's trade secrets.

309. Because *Defendants Bound to Confidentiality* and *BHI/NHT Joint Enterprise*, willfully and maliciously misappropriated OLA's confidential, proprietary or non-public business information and/or trade secrets, OLA is entitled to exemplary damages in an amount not exceeding twice any award that the Court makes under ¶ 308. OLA is also entitled to its attorneys' fees.

## COUNT III: BREACH OF CONTRACT

310. OLA and each of the *Defendants Bound to Confidentiality* entered into valid and enforceable contracts – the Notice & Agreement. And, as state above, *Defendants Bound to Confidentiality* also made numerous agreements to keep OLA's confidential information confidential.

311. Under the Notice & Agreement, OLA was obligated to provide each of the *Defendants Bound to Confidentiality* access to OLA's confidential, proprietary or non-public business information and/or trade secrets. OLA complied with its obligation.

312. Under the Notice & Agreement, each of the *Defendants Bound to Confidentiality* was obligated to (a) recognize that OLA's Online Demo was confidential and proprietary, (b) not disclose or use information received from OLA, the Online Demo or any subsequent discussions or presentations without OLA's express written permission and (c) view the Online Demo only to consider a business opportunity with OLA. Each of the *Defendants Bound to Confidentiality* failed to comply with its obligations.

313. Specifically, each of the *Defendants Bound to Confidentiality* used and disclosed information in the course of participating in *BHI/NHT Joint Enterprise* and in creating *Envision*.

314. The breach of the Notice & Agreement by each of the *Defendants Bound to Confidentiality* caused and continues to cause OLA damages.

315. OLA seeks damages to compensate it for each of the *Defendants Bound to Confidentiality*'s breach.

**COUNT IV: FRAUD**

316. Each of the *Defendants Bound to Confidentiality* acquired OLA's confidential, proprietary or non-public business information and/or trade secrets by falsely representing itself as an interested potential business partner or customer when, in fact, each had no interest in becoming a business partner with, or customer of, OLA.

317. Each of the *Defendants Bound to Confidentiality* intended to use OLA's confidential, proprietary or non-public business information and/or trade secrets to create NHT and *Envision*. Specifically, as early as May of 2000, shortly after Fogelson announced the creation of *Builder's On-Line Assistant*, *BHI/NHT Joint Enterprise*

(including *Defendants Bound to Confidentiality*), began the development of a virtual design studio to replicate *Builder's On-Line Assistant.*

318. The representations that *Defendants Bound to Confidentiality* made to OLA were material since OLA would not have provided them access to its confidential, proprietary or non-public business information and/or trade secrets but for their false representations that they were interested potential business partners or customers. Moreover, each of the *Defendants Bound to Confidentiality* knew or should have known that its failure to disclose its participation in *BHI/NHT Joint Enterprise* and its intent to create *Envision* was a material failure to disclose the truth when the need for disclosure was obvious.

319. By making their representations, *Defendants Bound to Confidentiality* induced OLA to provide them its confidential, proprietary or non-public business information and/or trade secrets.

320. *Defendants Bound to Confidentiality* knew that their representations to OLA were false when they made the representations.

321. *Defendants Bound to Confidentiality* intended OLA to rely upon their representations.

322. OLA did reasonably rely upon the representations made by *Defendants Bound to Confidentiality* when it disclosed its confidential, proprietary or non-public business information and/or trade secrets.

323. *Defendants Bound to Confidentiality* injured OLA as detailed in this Complaint. They obtained the benefits of their false representations, including, by way of example, the benefits stated in ¶¶ 303 through 307.

324. OLA is entitled to actual and exemplary damages from *Defendants Bound to Confidentiality*.

325. OLA could not have discovered by the exercise of reasonable diligence the fraud committed by *Defendants Bound to Confidentiality* until after four years before the filing of this suit.

## COUNT V: COMBINATION AND CONSPIRACY IN RESTRAINT OF TRADE

326. There is a relevant economic market for virtual design centers such as *Envision* and *Builder's On-Line Assistant*. As it now stands, there is no competitor to Envision or *BHI/NHT Joint Enterprise*.

327. The members of *BHI/NHT Joint Enterprise* have agreed that none of them will use *Builder's On-Line Assistant* or license the '455 and '553 patents. They have agreed to use their market positions to foreclose OLA and *Builder's On-Line Assistant* from the market. By doing so, the members of *BHI/NHT Joint Enterprise* no longer exercise independent decision marking. This agreement is an illegal group boycott and an unreasonable restraint of trade in violation of 15 U.S.C. § 1.

328. *BHI/NHT Joint Enterprise* has eliminated competition between and among the members of its builder consortium and between and among the members of its manufacturer consortium in purchasing and licensing virtual design centers. *BHI/NHT Joint Enterprise* has also eliminated competition between and among its members in purchasing and licensing virtual design centers.

329. But for the acts of *BHI/NHT Joint Enterprise*, OLA would have become a competitor of the *BHI/NHT Joint Enterprise* controlled NHT. Because of the agreement among the members of *BHI/NHT Joint Enterprise*, OLA is foreclosed from introducing

*Original Complaint, page 69.*

*Builder's On-Line Assistant* into the national market or otherwise exploiting its product and patents.

330.   As part of its boycott, *BHI/NHT Joint Enterprise* has used its market power to cause other homebuilders and manufactures to not use *Builder's On-Line Assistant* or license OLA's patents.

331.   The boycott implemented by the *BHI/NHT Joint Enterprise* is a *per se* violation of 15 U.S.C. § 1.

332.   Alternatively, to the extent that such actions are not a *per se* violation of 15 U.S.C. §§ 1, *et. seq.*, the boycott is an antitrust violation pursuant to the rule of reason because it has an adverse impact on competition in the market.

333.   Because of the *BHI/NHT Joint Enterprise* boycott, OLA has suffered an antitrust injury as a supplier of services in the homebuilder virtual design center market and as a competitor to *BHI/NHT Joint Enterprise* controlled NHT.

### PRAYER

OLA prays for judgment and relief that:

a.   the defendants be held liable under each claim for relief set forth in this Complaint;

b.   the defendants be required to account for all damages sustained by OLA as a result of their infringement of the '455 and '553 patents together with legal pre and post-judgment interest from the date of accrual thereof, such damages to be no less than a reasonable royalty, and that OLA be awarded those damages;

c.   the defendants' infringement of the '445 and '553 patents be found willful and that such damages be increased by three times the amount found or assessed pursuant to 35 U.S.C. § 284, and that OLA be awarded those damages;

d.   the defendants be enjoined from further infringement of the '455 and '553 patents;

e. the defendants be enjoined from boycotting OLA and *Builder's On-Line Assistant*;

f. the defendants be required to pay damages or, alternatively, a reasonable royalty, to which OLA is entitled under the Illinois Trade Secrets Act for their misappropriation of OLA's confidential, proprietary or non-public business information and/or trade secrets;

g. the defendants be required to pay to OLA exemplary damages under the Illinois Trade Secrets Act in an amount to be determined by this Court for the defendants' willful and malicious misappropriation of OLA's confidential, proprietary or non-public business information and/or trade secrets in amount not to exceed twice the amount awarded by the Court under the previous paragraph;

h. the defendants, their agents, servants, employees, and attorneys and all other persons in active concert or participation with them be enjoined from further misappropriating trade secrets of OLA or common law rights of OLA to its technology and confidential business information and from further breaching non-disclosure agreements with OLA;

i. the defendants be required to pay OLA actual and exemplary damages caused by their common law fraud;

j. the defendants be required to pay actual and treble damages under 15 U.S.C. § 15;

k. the defendants be required to pay OLA its reasonable attorneys' fees and disbursements incurred therein, pursuant to 35 U.S.C. § 285, 15 U.S.C. § 1117, 765 Ill Comp. Stat. 1065/5, 15 U.S.C. § 15 and the equity powers of this Court;

l. the defendants be required to pay the costs of this action; and

m. the Court awards OLA such other and further relief as is just and equitable.

Respectfully submitted,

By:___/s/ Scott M. Clearman_____
SCOTT M. CLEARMAN
Attorney for OLA, llc

THE CLEARMAN LAW FIRM PLLC

Scott M. Clearman
Texas State Bar No. 04350090
Email:  scott@clearmanlaw.com
Brian D. Walsh
Texas State Bar No. 24037665
Email:  brian@clearmanlaw.com
4100 Bank of America Center
700 Louisiana
Houston, Texas 77002
Telephone:    (713) 223-2005
Facsimile:    (713) 223-3664

GOLDSTEIN, FAUCETT & PREBEG, L.L.P.

Matthew J. M. Prebeg
Texas State Bar No. 00791465
Email:  mprebeg@gfpiplaw.com
Edward W. Goldstein
Texas State Bar No. 08099500
Email:  egoldstein@gfiplaw.com
Holly H. Barnes
Texas State Bar No. 24045451
Email:  hbarnes@gfpiplaw.com
1177 West Loop South, Fourth Floor
Houston, Texas 77027
Telephone:    (713) 877-1515
Facsimile:    (713) 877-1145